1

2

3

4

5

6               UNITED STATES  DISTRICT COURT

7                  Northern District of California

8

9

PATRICK COLLINS, INC.,                    No. C 11-2766 MEJ

10
                        Plaintiff,          **ORDER GRANTING PLAINTIFF'S**
11          v.                              **EX PARTE APPLICATION FOR**
                                            **LEAVE TO TAKE LIMITED**
12   DOES 1-2,590,                          **EXPEDITED DISCOVERY**

13                       Defendants.        **Docket No. 5**

14
     _____/
15

16                         **I.  INTRODUCTION**

17          Plaintiff Patrick Collins, Inc. ("Plaintiff") has filed an *ex parte* Application pursuant to

18   Federal Rules of Civil Procedure 26 and 45, requesting leave to take expedited discovery to

19   determine the identity of 2,590 Doe Defendants (collectively, "Defendants") named in this action.

20   Dkt. No. 5 ("Pl.'s App."). For the reasons provided below, the Court **GRANTS** Plaintiff's

21   Application.

22                         **II.  BACKGROUND**

23          On June 7, 2011, Plaintiff filed this lawsuit against 2,590 Doe Defendants, alleging that

24   Defendants illegally reproduced and distributed a work subject to Plaintiff's exclusive license,

25   ("*Real Female Orgasms 10*"), using an internet peer-to-peer ("P2P") file sharing network known as

26   BitTorrent, and thereby violated the Copyright Act, 17 U.S.C. § 101-1322. Compl. ¶¶ 6-15, Dkt.

27   No. 1. Plaintiff alleges that because the alleged infringement occurred on the internet, Defendants

28   acted under the guise of their Internet Protocol ("IP") addresses rather than their real names. *Id.* at ¶

UNITED STATES DISTRICT COURT
For the Northern District of California

10; Pl.'s App. at 3. As a result, Plaintiff contends that it cannot determine Defendants' true identities without procuring the information from Defendants' respective Internet Service Providers ("ISPs"), which can link the IP addresses to a real individual or entity. Pl.'s App. at 3. Consequently, Plaintiff asks the Court to grant it expedited discovery to issue subpoenas to the relevant ISPs so that the ISPs will produce the name, address, telephone number, and email address for each Defendant. *Id.* at 25.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 26(d)(1), a court may authorize early discovery before the Rule 26(f) conference for the parties' convenience and in the interest of justice. Courts within the Ninth Circuit generally use a "good cause" standard to determine whether to permit such discovery. *See, e.g., Apple Inc. v. Samsung Electronics Co., Ltd.*, 2011 WL 1938154, at *1 (N.D. Cal. May 18, 2011); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. The court must perform this evaluation in light of "the entirety of the record . . . and [examine] the reasonableness of the request in light of all the surrounding circumstances." *Id.* at 275 (citation & quotation marks omitted). In determining whether there is good cause to allow expedited discovery to identify anonymous internet users named as doe defendants, courts consider whether: (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

## IV. DISCUSSION

**A.      Whether Plaintiff has Identified the Defendants with Sufficient Specificity**

2

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Under the first factor, the Court must examine whether Plaintiff has identified the Defendants

2 with sufficient specificity, demonstrating that each Defendant is a real person or entity who would

3 be subject to jurisdiction in this Court. *See id.* at 578.  Here, Plaintiff proffers that it retained

4 Copyright Enforcement Group, LLC ("CEG"), which utilized forensic software to identify

5 Defendants' IP addresses on the date and time that they engaged in the alleged distribution of *Real*

6 *Female Orgasms 10* via the BitTorrent protocol, and has compiled the information into a log

7 attached as Exhibit A to Plaintiff's Complaint.  Pl.'s App. at 9; Decl. of Jon Nicolini ¶¶ 10-16, Dkt.

8 No. 5-1.  Plaintiff explains that Defendants gained access to the Internet only by setting up an

9 account through various ISPs, and that by providing the ISPs the information detailed in Exhibit A,

10 the ISPs can look up the Defendants' identities by reviewing their respective subscriber activity

11 logs.  Nicolini Decl. ¶¶ 18-20.  Thus, the Court finds that Plaintiff has come forward with sufficient

12 information demonstrating that the Defendants are real persons or entities who may be sued in

13 federal court. *See MCGIP, LLC v. Does 1-149*, 2011 WL 3607666, at *2 (N.D. Cal. Aug. 15, 2011)

14 (finding that the plaintiff had identified the Doe defendants with sufficient specificity by submitting

15 a chart listing each of the defendants by the IP address assigned to them on the day it alleged the

16 particular defendant engaged in the infringing conduct).

17 **B.      Whether Plaintiff has Identified All Previous Steps to Locate Defendants**

18    Under the second factor, the Court must assess the prior steps Plaintiff has taken to locate the

19 Defendants. *See Columbia Ins. Co.*, 185 F.R.D. at 579.  "This element is aimed at ensuring that

20 plaintiffs make a good faith effort to comply with the requirements of service of process and

21 specifically identifying defendants." *Id.*  Here, Plaintiff contends that it has exhausted all possible

22 means to find the Defendants' names, addresses, phone numbers, and email addresses.  Pl.'s App. at

23 9.  In support, Plaintiff cites to paragraphs 18 through 20 of Mr. Nicolini's Declaration. *Id.*

24 Reviewing Mr. Nicolini's testimony, he states CEG's System inspects file-sharing networks for

25 computers that are distributing at least a substantial portion of a copy of a copyrighted work owned

26 by Plaintiff, and when CEG finds such a computer, CEG's System also collects publicly accessible

27 information, including the time and date the infringer was found, the IP address assigned to the

28

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1   infringer's computer, the size of the accused file, and the name of the ISP having control of the IP

2   address. Nicolini Decl. ¶ 18. Mr. Nicolini states that, because of the partially anonymous nature of

3   the P2P Internet distribution system used by Defendants, CEG is unable to determine their true

4   names, street addresses, telephone numbers, and email addresses. *Id.*

5        First, to locate swarms[1] where peers were distributing *Real Female Orgasms 10*, CEG

6   utilizes its data collection system to find digital files on the Internet that have the same title as the

7   copyrighted work. *Id.* ¶¶ 11, 14. Mr. Nicolini states that, in this case, the P2P network on which

8   CEG found unauthorized distribution of *Real Female Orgasms 10* was a BitTorrent network. *Id.* ¶

9   16. CEG then downloads a full copy of the file, which is then forwarded to a two-stage verification

10  computer process and identified by two people. *Id.* ¶ 17. The process compares the digital data in

11  the suspect file with digital data in a digital copy of the motion picture obtained from Plaintiff. *Id.*

12  If the suspect file matches the authorized file, then the two people play the suspect file and watch the

13  motion picture. *Id.* If both people confirm that a substantial portion of the motion picture in the

14  suspect file is substantially the same as a corresponding portion of *Real Female Orgasms 10*, then

15  particular unique data (often referred to as metadata) in the suspect file is noted by CEG's System,

16  and the System searches for additional computers on P2P networks that have the same suspect file.

17  *Id.*

18       After locating and inspecting computers that are distributing at least a substantial portion of a

19  copy of *Real Female Orgasms 10*, Mr. Nicolini states that CEG's System collects (a) the time and

20  date the infringer was found, (b) the time(s) and date(s) when a portion of the accused file was

21  downloaded successfully to the accused infringer's computer, (c) the time and date the infringer was

22  last successfully connected to via the P2P network with respect to the infringer's computer's

23  _____

24      [1]P2P networks distribute infringing copies of copyrighted works with file sharing software
    such as BitTorrent when one user accesses the Internet through an ISP and intentionally makes a
25  digital file of a work available to the public from his or her computer. Nicolini Decl. ¶ 6. This file
    is referred to as the first "seed." *Id.* Other users, who are referred to as "peers," then access the
26  Internet and request the file. *Id.* These users engage each other in a group, referred to as a "swarm,"
27  and begin downloading the seed file. *Id.* As each peer receives portions of the seed, that peer makes
    those portions available to other peers in the swarm. *Id.*

28

1    downloading and/or uploading the accused file to the Internet, (d) the IP address assigned to the

2    infringer's computer, (e) the P2P software application used by the infringer and the port number

3    used by the infringer's P2P software, (f) the size of the accused file, (g) the percent of the file

4    downloaded by CEG from the infringer's computer, (h) the percent of the accused file on the

5    infringer's

6    computer which is available at that moment for copying by other peers, and (i) any relevant

7    transfer errors. *Id.* ¶ 18. In addition, CEG uses available databases to record the name of the ISP

8    having control of the IP address and the state (and often the city or county) associated with that IP

9    address. *Id.*

10          Based on Mr. Nicolini's explanation of the foregoing steps as utilized to investigate

11   Defendants' activity with respect to *Real Female Orgasms 10* on the BitTorrent protocol, the Court

12   finds that Plaintiff has sufficiently described its efforts to identify Defendants.

13   **C.      Whether Plaintiff's Suit Against Defendants Could Withstand a Motion to Dismiss**

14          Under the third factor, the inquiry shifts to the substance of Plaintiff's claims and analyzes

15   whether Plaintiff's Complaint would likely survive a motion to dismiss. *See Columbia Ins. Co.*, 185

16   F.R.D. at 579. In its Complaint, Plaintiff has asserted a federal copyright infringement claim. To

17   state a claim for copyright infringement, Plaintiff must establish: (1) ownership of a valid copyright,

18   and (2) copying of constituent elements of the copyrighted work that are original. *Rice v. Fox*

19   *Broad. Corp.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (citing *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*,

20   499 U.S. 340, 361 (1991)). "To be liable for direct infringement, one must 'actively engage in' and

21   'directly cause' the copying." *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1199

22   (N.D. Cal. 2004). Reviewing Plaintiff's Complaint, Plaintiff has adequately alleged that *Real*

23   *Female Orgasms 10* is the subject of a valid Certificate of Registration issued by the United States

24   Copyright Office and that Plaintiff is the exclusive rightsholder of the distribution and reproduction

25   rights of *Real Female Orgasms 10*. Compl. ¶¶ 7, 8. Plaintiff has also alleged that the Defendants

26   reproduced and distributed *Real Female Orgasms 10* via BitTorrent to numerous third parties.

27   Compl. ¶¶ 10-12. Additionally, Plaintiff has alleged that Defendants actively engaged in or directly

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

5

1   caused the copying by completing each of the steps in the BitTorrent file-sharing protocol, including

2   intentionally downloading a torrent file particular to *Real Female Orgasms 10*, loading that torrent

3   file into the BitTorrent client, entering a BitTorrent swarm particular to *Real Female Orgasms 10*,

4   and ultimately, downloading and uploading pieces of a *Real Female Orgasms 10* file to eventually

5   obtain a whole copy of the file. *Id*. Based on these allegations, the Court finds that Plaintiff has

6   pled a *prima facie* case of copyright infringement and set forth sufficient supporting facts to survive

7   a motion to dismiss.

8   **D.     Whether there is a Reasonable Likelihood of Being Able to Identify Defendants**

9           The fourth factor examines whether Plaintiff has demonstrated that there is a reasonable

10  likelihood that the discovery it requests will lead to the identification of Defendants such that it may

11  effect service of process. *See Columbia Ins.*, 185 F.R.D. at 580. As indicated above, Plaintiff

12  contends that the key to locating the Defendants is through the IP addresses associated with the

13  alleged activity on BitTorrent. Specifically, Plaintiff contends that because ISPs assign a unique IP

14  address to each subscriber and retain subscriber activity records regarding the IP addresses assigned,

15  the information sought in the subpoena will enable Plaintiff to serve Defendants and proceed with

16  this case. *See* Pl.'s App. at 6; Nicolini Decl. ¶¶ 19-20. Taking this into account, the Court finds that

17  Plaintiff has made a sufficient showing as to this factor.

18  **E.     Summary**

19          Taking the foregoing factors into consideration, the Court finds that Plaintiff has

20  demonstrated that good cause exists to grant it leave to conduct early discovery. Moreover, the

21  Court finds that the expedited discovery sought furthers the interests of justice and presents minimal

22  inconvenience to the ISPs to which the subpoenas are directed. Thus, the expedited discovery is in

23  line with Rule 26(d).

24  **F.     Joinder of 2,590 Defendants**

25          Having found that expedited discovery is appropriate, the question becomes whether the

26  discovery sought is proper as to all 2,590 Defendants. Anticipating this question, Plaintiff presents a

27  lengthy discussion in its Application as to why its decision to name join 2,590 Defendants is

28

6

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1  justified under Rule 20. *See* Pl.'s App. at 11-19. Under Rule 20, defendants may be joined in one

2  action when claims arise from the same transaction or occurrence or series of transactions or

3  occurrences, and any question of law or fact in the action is common to all defendants. Fed. R. Civ.

4  P. 20(a)(2).

5  The permissive joinder rule "is to be construed liberally in order to promote trial convenience and to

6  expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save*

7  *Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1997). The purpose of

8  Rule 20(a) is to address the "broadest possible scope of action consistent with fairness to the parties;

9  joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v.*

10  *Gibbs*, 383 U.S. 715, 724 (1966). Rule 20(a) imposes two specific requisites to the joinder of

11  parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or

12  arising out of the same transaction or occurrence, and (2) some question of law or fact common to

13  all the parties must arise in the action. Fed. R. Civ. P. 20(a). Both of these requirements must be

14  satisfied in order to justify party joinder under Rule 20(a). *Id.* In situations of misjoinder of parties,

15  Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or

16  drop a party."

17         1.      Same Transaction, Occurrence, or Series of Transactions or Occurrences

18         "The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of

19  transactions or occurrences' to require a degree of factual commonality underlying the claims."

20  *Bravado Int'l Group Merchandising Servs. v. Cha*, 2010 WL 2650432, at *4 (C.D. Cal. June 30,

21  2010) (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir.1997)). Typically, this means that a

22  party "must assert rights . . . that arise from related activities-a transaction or an occurrence or a

23  series thereof." *Id.* (citation omitted). Recently, courts in this District – as well as several other

24  federal districts – have come to varying decisions about the proprietary of joining multiple

25  defendants in BitTorrent infringement cases. *See MCGIP, LLC v. Does 1-149*, 2011 WL 3607666,

26  at 3 (N.D. Cal. Aug. 15, 2011) (listing a sample of recent decisions). This Court has carefully

27  reviewed such decisions and notes that they are highly dependent on the information the plaintiff

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    presented regarding the nature of the BitTorrent file-sharing protocol and the specificity of the

2    allegations regarding the Doe defendants' alleged infringement of the protected work.  Both of these

3    factors guide the Court's joinder analysis in this matter as well.

4              Reviewing Plaintiff's Application and supporting materials, Plaintiff has provided a fairly

5    detailed explanation about how the BitTorrent protocol operates.  *See* Nicolini Decl. ¶¶ 6, 7, 22.  Mr.

6    Nicolini explains:

7               P2P networks distribute infringing copies of motion pictures (and
                works in other forms such as music and books) with file sharing
8               software such as BitTorrent as follows: The process begins with one
                user accessing the Internet through an Internet Service Provider
9               ("ISP")
                and intentionally making a digital file of the work available on the
10              Internet to the public from his or her computer. This first file is often
                referred to as the first "seed." I will refer to the person making this
11              seed available as the "original seeder." Persons seeking to download
                such a work also access the Internet through an ISP (which may or
12              may not be the same ISP as used by the original seeder) and seek out
                the work on a P2P network. With the availability of the seed, other
13              users, who are referred to as "peers," access the Internet and request
                the file (by searching for its title or even searching for the torrent's
14              "hash" - described below) and engage the original seeder and/or each
                other in a group, sometimes referred to as a "swarm," and begin
15              downloading the
                seed file. In turn, as each peer receives portions of the seed, most often
16              that peer makes those portions available to other peers in the swarm.
                Therefore, each peer in the swarm is at least copying and is usually
17              distributing, as a follow-on seeder, copyrighted material at the same
                time. Of the over 20,000 infringers tracked in connection with several
18              cases currently pending, at least 95% of the Doe defendants were
                uploading (i.e., distributing) illegal copies of our clients' motion
19              pictures at the moment indicated by the Timestamp in the respective
                Exhibit A appended to each complaint, which is also true for this case.
20              In P2P networks, the infringement may continue even after the
                original seeder has gone completely offline. Any BitTorrent client may
21              be used to join a swarm. As more peers join a swarm at any one
                instant, they obtain the content at even greater speeds because of the
22              increasing number of peers simultaneously offering the content as
                seeders
23              themselves for unlawful distribution. As time goes on, the size of the
                swarm varies, yet it may endure for a long period, with some swarms
24              enduring for 6 months to well over a year depending on the popularity
                of a particular motion picture.

25   Nicolini Decl. ¶ 6. Based on this information, the Court finds that Plaintiff has at least presented a

26   reasonable basis to argue that the BitTorrent protocol functions in such a way that peers in a single

27   swarm downloading or uploading a piece of the same seed file may fall within the definition of

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  "same transaction, occurrence, or series of transactions or occurrences" for purposes of Rule

2  20(a)(1)(A).

3        Further, the Court finds that Plaintiff has provided enough specificity to make a preliminary

4  determination that the 2,590 Doe Defendants here were part of the same swarm.  Reviewing Exhibit

5  A to Plaintiff's Complaint, Defendants' alleged infringing activity occurred over a period of over

6  one year, from May 19, 2010 through June 2, 2011.  *See* Compl, Ex. A.  While this period might

7  seem protracted, with respect to any particular swarm, the hash (an alphanumeric representation of a

8  digital file) associated with the copied file's torrent file remains the same within that swarm.

9  Nicolini Decl. ¶ 6.  For each of the 2,590 Doe Defendants, Plaintiff has provided an identical hash.

10  Compl, Ex. A.  Based on these allegations, Plaintiff's claims against the Doe Defendants appear

11  logically related.  Each putative Defendant is a possible source for Plaintiff's copyrighted work, and

12  may be responsible for distributing the work to the other putative Defendants, who are also using the

13  same file-sharing protocol to copy the identical copyrighted material.  *See Disparte v. Corporate*

14  *Executive Bd.*,

15  223 F.R.D. 7, 10 (D.D.C. 2004) (to satisfy Rule 20(a)(2)(A) claims must be "logically related" and

16  this test is "flexible.").  While the Doe Defendants may be able to rebut these allegations later, the

17  plaintiffs have sufficiently alleged that their claims against the defendants potentially stem from the

18  same transaction or occurrence, and are logically related.  *See Arista Records LLC v. Does 1–19*,

19  551 F. Supp.2d 1, 11 (D.D.C.) ("While the Court notes that the remedy for improper joinder is

20  severance and not dismissal, . . . the Court also finds that this inquiry is premature without first

21  knowing Defendants' identities and the actual facts and circumstances associated with Defendants'

22  conduct.").  Plaintiff has made a preliminary showing that these Defendants were present in the

23  same *Real Female Orgasms 10* swarm on BitTorrent and shared pieces of the same seed file

24  containing *Real Female Orgasms 10*.

25        2.      Question of Law or Fact Common to All Defendants

26     Rule 20(a)(2)(B) requires Plaintiff's claims against the putative Doe Defendants to contain a

27  common question of law or fact.  Here, Plaintiff will have to establish against each Defendant the

28

9

UNITED STATES DISTRICT COURT
For the Northern District of California

1  same legal claims concerning the validity of the copyright in *Real Female Orgasms 10* and the

2  infringement of the exclusive rights reserved to Plaintiff as copyright holder.  Furthermore, Plaintiff

3  alleges that the Defendants utilized the same BitTorrent file-sharing protocol to illegally distribute

4  and download *Real Female Orgasms 10* and, consequently, factual issues related to how BitTorrent

5  works and the methods used by Plaintiff to investigate, uncover, and collect evidence about the

6  infringing activity will be essentially identical for each Defendant.  *See Call of the Wild Movie, LLC*

7  *v. Does 1-1062*, 770 F. Supp. 2d 332, 343 (D.D.C. 2011).  The Court recognizes that each putative

8  defendant may later present different factual and substantive legal defenses "but that does not defeat,

9  at this stage of the proceedings, the commonality in facts and legal claims that support joinder under

10  Rule 20(a)(2)(B)."  *Id.*

11              3.      Prejudice to Any Party or Needless Delay

12          Finally, the Court assesses whether joinder would prejudice the parties or result in needless

13  delay.  Joinder in a single case of the putative defendants who allegedly infringed the same

14  copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative

15  defendants.  *Id.* at 344; *London–Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass.

16  2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve

17  similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to

18  share copyrighted sound recordings and the discovery of defendants' identities through the use of a

19  Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative

20  efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if

21  any, that other John Does have raised.").

22          Here, Plaintiff is currently obtaining identifying information from ISPs so that they can

23  properly name and serve the defendants.  If the Court were to consider severance at this juncture,

24  Plaintiff would face significant obstacles in its efforts to protect its copyright from illegal

25  file-sharers and this would only needlessly delay the case.  Plaintiff would be forced to file 2,590

26  separate lawsuits, in which it would then move to issue separate subpoenas to ISPs for each

27  defendant's identifying information.  Plaintiff would additionally be forced to pay the Court separate

28

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1    filing fees in each of these cases, which would further limit its ability to protect its legal rights.

2    "This would certainly not be in the 'interests of convenience and judicial economy,' or 'secure a

3    just, speedy, and inexpensive determination of the action.'" *Call of the Wild*, 770 F. Supp. 2d at 334

4    (citation omitted) (declining to sever defendants where parties joined promotes more efficient case

5    management and discovery and no party prejudiced by joinder).

6          Further, the Doe Defendants are currently identified only by their IP addresses and are not

7    named parties. Consequently, they are not required to respond to Plaintiff's allegations or assert a

8    defense.  The defendants may be able to demonstrate prejudice once Plaintiff proceeds with its case

9    against them, but they cannot demonstrate any harm that is occurring to them before that time.  *Id.*

10         Thus, the Court finds that, at this preliminary stage, Plaintiff has met the requirements of

11   permissive joinder under Rule 20(a)(2).  The putative defendants are not prejudiced but likely

12   benefitted by joinder, and severance would debilitate Plaintiff's efforts to protect its copyrighted

13   material and seek redress from the Doe Defendants who have allegedly engaged in infringing

14   activity.  To be fair, the Court recognizes that the questions of joinder and severance must be

15   deferred until after discovery has been authorized and any motions to quash filed.  The Court is also

16   cognizant of the logistical and administrative challenges of managing a case with numerous putative

17   defendants, a number of whom may seek to file papers pro se.  However, severing the putative

18   defendants at this early stage is no solution to ease the administrative burden of the cases. The Court

19   therefore declines to sever the Doe Defendants at this time.

20                                    **V.   CONCLUSION**

21         For the reasons stated above, the Court **GRANTS** Plaintiff's Ex Parte Application for

22   Expedited Discovery (Dkt. No. 5) as follows:

23         1.  IT IS HEREBY ORDERED that Plaintiff is allowed to serve immediate discovery on

24   Does 1-2,590's ISPs listed in Exhibit A to the Complaint by serving a Rule 45 subpoena that seeks

25   information sufficient to identify the Doe Defendants, including the name, address, telephone

26   number, and email address of Does 1-2,590.  Plaintiff's counsel shall issue the subpoena and attach a

27   copy of this Order.

28

                                          11

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1       2.  IT IS FURTHER ORDERED that the ISP will have 30 days from the date of service upon

2  them to serve Does 1-2,590 with a copy of the subpoena and a copy of this Order.  The ISP may

3  serve the Doe Defendants using any reasonable means, including written notice sent to his or her last

4  known address, transmitted either by first-class mail or via overnight service.

5       3.  IT IS FURTHER ORDERED that Does 1-2,590 shall have 30 days from the date of

6  service to file any motions in this Court contesting the subpoena (including a motion to quash or

7  modify the subpoena).  If that 30-day period lapses without Does 1-2,590 contesting the subpoena,

8  the ISP shall have 10 days to produce the information responsive to the subpoena to Plaintiff.

9       4.  IT IS FURTHER ORDERED that the subpoenaed entity shall preserve any subpoenaed

10  information pending the resolution of any timely-filed motion to quash.

11       5.  IT IS FURTHER ORDERED that the ISP that receives a subpoena pursuant to this order

12  shall confer with Plaintiff and shall not assess any charge in advance of providing the information

13  requested in the subpoena.  The ISP that receives a subpoena and elects to charge for the costs of

14  production shall provide a billing summary and cost reports that serve as a basis for such billing

15  summary and any costs claimed by the ISP.

16       6.  IT IS FURTHER ORDERED that Plaintiff shall serve a copy of this order along with any

17  subpoenas issued pursuant to this order to the necessary entities.

18       7.  IT IS FURTHER ORDERED that any information disclosed to Plaintiff in response to a

19  Rule 45 subpoena may be used by Plaintiff solely for the purpose of protecting Plaintiff's rights as

20  set forth in its complaint.

21       **IT IS SO ORDERED.**

22

23  Dated: August 24, 2011

24                                 Maria-Elena James
                               Chief United States Magistrate Judge

25

26

27

28