UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

FILED
2011 OCT 26 P 3:50
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N. DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK COLLINS, INC., <br> Plaintiff, <br> vs. <br> DOES 1-2,590, <br> Defendants. <br> _____/ | CASE No. CV-11-2766-MEJ <br><br> MOTION TO QUASH OR MODIFY SUBPOENA |



## MOTION TO QUASH OR MODIFY SUBPOENA

I received a letter from my ISP regarding a subpoena, which included a copy of the Order Granting Plaintiff's Application for Leave to Take Discovery.

From accounts of previous defendants of other copyright infringement lawyers, such as Steele Hansmeier, these subpoena notifications are followed by demand letters. These letters -- which usually demand amounts in the area around $2500 - $3000, to avoid dealing with their lawsuit[1] -- and their phone calls, which are persistent[2], are the reason I am filing this motion, and for this reason, I respectfully request that I be allowed to do so without revealing my personally identifying information.

Plaintiffs may argue that this motion should be dismissed because of its anonymous filing. The reason for filing this motion anonymously is because the undersigned fears retaliation by the Plaintiffs (see K-Beech, Inc. v. John Does 1-85, 3:11cv469-JAG

> "...When any of the defendants have filed a motion to dismiss or sever themselves from the litigation, however, the plaintiffs have immediately voluntarily dismissed them as parties to prevent the defendants from bringing their motions before the Court for resolution. This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal

---

[1] Google search: "steele hansmeier letter"
[2] Google search: "steele hansmeier phone calls"

information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does. Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, die plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits").

## INTRODUCTION

The instant case is part of a systemic effort to build a business model based on weak allegations of copyright infringement and questionable use of the legal system to quickly wrest profit generating settlements from Defendants cowed by the high cost and potential liability of such litigation. Various Courts have skeptically described these for-profit copyright lawsuits, however, I find the Chief Justice of the U.S. District Court for the District of Nevada Judge Robert Hunt's analysis to be especially relevant when describing such suits as merely

Plaintiff's "attempt[] to create a cottage industry of filing copyright claims, making large claims for damages and then settling claims for pennies on the dollar." *Democratic Underground*, No.

2:11-cv-01356 (D. Nev. Apr. 14, 2011), Dkt. 94. Other Courts have been even more direct, excoriating "plaintiffs who file cases with extremely weak infringement positions in order to settle for less than the cost of defense and have no intention of taking the case to trial. Such a practice is an abuse of the judicial system and threatens the integrity of and respect for the courts." Mem. Op. and Order at 5, *Raylon LLC v. EZ Tag Corp.*, No. 6:09-cv-00357 (E.D. Tex. Mar. 9, 2011), Dkt. 115.

In perhaps the most explicit demonstration and subsequent repudiation of Plaintiff's for profit litigation model, Judge Beeler of the U.S. District Court for The Northern District of California, directly rebuked Plaintiff Patrick Collins, Inc., (the same Plaintiff as the instant action) in an identical BitTorrent case involving 188 Doe defendants stating in response to an order to show cause:

> [t]he court has no confidence that Plaintiff has been diligent in moving to name and serve defendants, despite its (unsworn) claims to the contrary. For example, Plaintiff's counsel states that he has filed ten other copyright cases involving a large number of Doe defendants. ECF No. 17 at 4. The court reviewed the dockets and noted that the plaintiffs in these cases have not filed proof of service for even a single defendant

even though a number of defendants have been identified and dismissed after settling with the plaintiffs. *See, e.g., Media Products, Inc. DBA Devil's Film v. Does 1-1257*, Case No. CV 10-04471 RS (complaint filed on October 4, 2010 and no proof of service filed for any defendant as of July 29,

2011, but four Doe defendants have been dismissed after settling). This pattern holds true in this case too. Here, Plaintiff has not identified or served any of the

1,219 Doe Defendants. However, on May 10, 2011, Plaintiff filed a stipulation dismissing with prejudice a Doe Defendant who settled with Plaintiff. ECF No. 13

at 1. And, on August 18, 2011, Plaintiff filed a stipulation dismissing with prejudice more than thirty Doe Defendants who setttled. ECF No. at 1-2. The plaintiffs in these cases appear content to force settlements without incurring any of the burdens involved in proving their cases. And, while the courts favor settlements, "filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not

what the joinder rules were established for." *IO Group, Inc. v. Does 1-435*, No. C 10-4382 SI, 2011 WL 445043, at *6 (N.D. Cal. Feb. 3, 2011).

Order Dismiss. Comp. Patrick Collins, Inc, v. Does 1-1,219 Case 4:10-cv-04468-LB Dkt No. 27 (D. Cal. 2011) 08/29/11.

Based on the extraordinarily large number of analogous cases, treated in the same or similar manner by plaintiffs, it appears that such mass-copyright litigation lawsuits are a vehicle "to identify hundreds of Doe defendants through pre-service discovery," then, regardless of any consideration of guilt or innocence seek to coerce largely contingent-fee settlements, sometime though harassing letters and direct phone calls with no real intent to actually litigate such claims. This for-profit business model becomes more obvious when one considers the actual number of defendants claimed in such actions versus the astonishingly low number of actions actually commenced.[3]

It now appears that Plaintiff merely seek to take advantage of the threat of a massive award of statutory damages, attorney's fees, ignorance about defenses, and perhaps most importantly, the stigma which attaches to defendants when associated with

---

[3] As of March 2011, more than 136,000 Does claimed as Defendants in such actions, however, the number of actual copyright infringement actions commenced was less than 100. See *Wired Magazine's* spreadsheet prepared from existing federal court data at: http://www.wired.com/images_blogs/threatlevel/2011/03/spreadsheet-fslit-current-v1.2.01.xls.

illegally downloading pornographic films to coerce quick, and profitable contingency-fee settlements. This Court has specifically and directly condemned such for-profit copyright litigation models. *Righthaven LLC v. Hill*, No. 1:11-cv-00211 (D. Colo. Apr. 7, 2011) (J. Kane), Dkt. 16 ("Plaintiff's wishes to the contrary, the courts are not merely tools for encouraging and exacting settlements from Defendants cowed by the potential costs of litigation and liability").

In light of the above referenced authority, in its following argument, I ask the Court to sever and dismiss Doe's from the present suit, and quash Plaintiff's subpoena.

To cut court costs while suing as many individuals as possible, Plaintiff's counsel, Ira M. Siegel, is using improper joinders in their mass lawsuits alleging copyright infringement through BitTorrent. Patrick Collins Inc., also has many other mass law suits in California, Colorado, Virgina, and Florida. A BitTorrent case nearly identical to this one, K-Beech vs Does 1-32 case 8:11-cv-01764-DKV has been dismissed.

Similar cases have also been dismissed, such as *CP Productions, Inc. v. Does 1-300 case 1:2010cv06255,* and in this case the court notes before dismissal:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap — if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.

Later, Judge Milton Shadur writes about Steele Hansmeier's abuse of the litigation system "in more than one way" with its "ill-considered" lawsuit:

> This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants – this one seeking the nullification of a February 11, 2011 subpoena issued to Comcast Communications, LLC. This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. But because the aggrieved Doe defendants continue to come out of the woodwork with motions to quash, indicating an unawareness of this Court's dismissal of this action, 1 CP's counsel is ordered to appear in court on March 9, 2011 at 9:00 a.m. Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

> *CP Productions, Inc. v. Does 1-300 case 1:2010cv06255 (dismissed ALL John Doe defendants)*

In another Steele Hansmeier BitTorrent case in Illinois, Judge Harold A. Baker writes in denying the motion for expedited discovery:

> Plainly stated, the court is concerned that the expedited *ex parte* discovery is a fishing expedition by means of a perversion of the purpose of and intent of Fed. R. Civ. P. 23.

*VPR Internationale vs. Does 1-1017 case 2:2011cv02068*

In the Northern District of California, these nearly identical BitTorrent cases have been severed for improper joinder:

> *Pacific Century International LTD v. Does 1-101 case 4:2011cv02533 (severed does 2-101)*
> *IO Group, Inc. v. Does 1-435 case 3:2010cv04382 (severed does 2-435)*
> *Diabolic Video Productions, Inc v. Does 1-2099 case 5:2010cv05865 (severed Does 2-2099)*
> *New Sensations, Inc v. Does 1-1768 case 5:2010cv05864 (severed Does 2-1768)*

In yet another nearly identical BitTorrent case, filed in the Northern District of California by Steele Hansmeier, *Millennium TGA, Inc v. Does 1-21 case 3:2011cv02258*, Judge Samuel Conti found the same joinder problems, and wrote in his order denying request for leave to take early discovery, "This Court does not issue fishing licenses;" And these nearly identical BitTorrent cases in the Northern District of California by the same plaintiff Boy Racer, again represented by Steele Hansmeier, have been severed for improper joinder:

> *Boy Racer, Inc v. Does 1-52 case 5:2011cv02329 (severed Does 2-52)*
> *Boy Racer, Inc v. Does 1-71 case 5:2011cv01958 (severed Does 2-72)*

In a recent order (6 Sep 2011) by Judge Bernard Zimmerman, Northern District of California, 5010 John Does were dismissed from *On The Cheap, LLC, v. Does 1-5011, case C10-4472 BZ*, due to improper joinder. Judge Zimmerman stated the following in his order:

> "This Court does not condone copyright infringement and encourages settlement of genuine disputes. However, Plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create the management and logistical problems discussed above and then to offer to settle with Doe defendants so they can avoid digging themselves out of the morass plaintiff is creating."

Another recent order ( 11 April 2011 ) by Judge William H. Alsup, Northern District of

California, 243 Does were dismissed from *10 Group Inc, v. Does 1 – 244, case c10-3647 WHA* due to improper joinder. Judge Alsup stated the following in his order:

> "There are no facts to support the assertion that defendants conspired with each other to reproduce plaintiffs works on eDonkey 2000 and the allegations that defendants simply used the same peer-to-peer network to download plaintiffs works – on many different days at many different times – is insufficient to allow plaintiff to litigate against hundreds of different Doe defendants in one action."

## ARGUMENT

### 1) Plaintiff Has Improperly Joined 2,590 Individual Defendants Based on Entirely Disparate Alleged Acts

The Plaintiff's joinder of 2,590 defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued. Mass joinder of individuals has been disapproved by federal courts in both the RIAA cases and elsewhere. As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . .
> Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

*BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at \*1 (E.D. Pa. Apr. 2, 2004)* (severing lawsuit involving 203 defendants).

Rule 20 requires that, for parties to be joined in the same lawsuit, the claims against them must arise from a single transaction or a series of closely related transactions. Specifically:

Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.
Fed. R. Civ. P. 20.

Thus, multiple defendants may be joined in a single lawsuit only when three conditions are met: (1) the right to relief must be "asserted against them jointly, severally or in the alternative"; (2) the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; **and** (3) there must be a common question of fact or law common to all the

defendants. *Id.*

Joinder based on separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement has been rejected by courts across the country. In *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), the court ordered severance of lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same violation of the law in exactly the same way. The court explained: "[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *LaFace Records*, 2008 WL 544992, at *2. In *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006), the court *sua sponte* severed multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement. See also *Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used same ISP and P2P network to conduct copyright infringement); *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); General Order, *In re Cases Filed by Recording Companies*, filed in *Fonovisa, Inc. et al. v. Does 1-41* (No. A-04-CA-550 LY), *Atlantic Recording Corporation, et al. v. Does 1-151* (No. A-04-CA-636 SS), *Elektra Entertainment Group, Inc. et al. v. Does 1-11* (No. A-04-CA-703 LY); and *UMG Recordings, Inc., et al. v. Does 1-51* (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004), RJN Ex. A, (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, *Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 (N.D. Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery as to first Doe defendant but staying case as to remaining Does until plaintiff could demonstrate proper joinder).

Plaintiff may argue that, unlike the RIAA cases, its allegations here are based upon use of the Internet to infringe a single work. While that accurately describes the facts alleged in this case, it does not change the legal analysis. Whether the alleged infringement concerns a single

copyrighted work or many, it was committed by unrelated defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses. That attenuated relationship is not sufficient for joinder. See BMG Music v. Does 1-203, 2004 WL 953888, at *1.

Nor does the analysis change because the BitTorrent protocol works by taking small fragments of a work from multiple people in order to assemble a copy. Nearly all of the older protocols in the aforementioned cases work in this fashion. Kazaa, eDonkey and various Gnutella clients (e.g., LimeWire) have incorporated multisource/swarming downloads since 2002.[4]

Plaintiff claims all of the Northern California defendants are properly joined because they illegally downloaded/shared the film (Real Female Orgasms 10) via BitTorrent. Plaintiff provided the Court Exhibit A, John Nicolini's declaration. See Complete, Ex. A., to their Motion for Leave to Serve Third Party Subpoenas Prior To A Rule 26(f) Conference (Attachment A), showing the IP addresses of the defendants and a specific "hit date (UTC)," it was observed illegally downloading/sharing the film. The first instance of downloading/sharing by defendants identified by plaintiff's agents occurred on May 19, 2010. The last instance of downloading/sharing identified by Plaintiff's agents was on June 2, 2011. Plaintiff incorrectly states the infringement was accomplished by the Defendants "acting in concert with each other." Exhibit A to Plaintiff's complaint shows the entire timeframe of the activity, but not which IP addresses acted in concert. The nature of BitTorrent does not support Plaintiff's claim that All John Doe IP addresses acted together for the entire period of approximately thirteen months.

The nature of BitTorrent is that the work in question is first made available to others BitTorrent users by a small number, usually one IP address. As other BitTorrent users join and start to download/share the work, the swarm grows. Depending on how popular the work is, the swarm can grow fast, or not at all. Eventually as the popularity of the shared work drops, the swarm shrinks, and eventually disappears. IP addresses commonly join and leave various BitTorrent swarms at all times during the life of the torrent. Plaintiff's agent, John Nicolini, Copyright Enforcement Group, LLC, collected the data on John Doe IP addresses (Exhibit A of Plaintiff's Complaint) and can verify the nature of BitTorrent, as well as provide details on who (if any) of the John Does IP addresses in this case truly shared the work between the other John

---

[4] http://gondwanaland.com/mlog/2004/12/30/deployment-matters/

Does IP addresses in this case.

In the January 2011 Technical Report: *An Estimate of Infringing Use of the Internet*, by *Envisional*[5] (a major company specializing in detecting and guarding against the threats of counterfeiting, piracy, fraud and online brand abuse), the following was noted for the single day analysis of BitTorrent use:

> For the 2.72 Million torrents identified, only .2% had 100 or more downloaders. 2.6% of the torrents had 10-99 downloaders. 51.9% of the torrents had from one to nine downloaders. 45.2% had no active downloads. Envisional also noted that a similar spread of "seeders" (users with a complete copy of the work) were associated with the torrents. For 48.5% of the torrents, there were no seeders connected. (Page 9)

This report clearly shows the vast majority of torrents only had zero to nine downloaders associated with them and a very limited number of file seeder at any one instance.

The similar but separate nature of the BitTorent connections is highlighted in three recently filed K-Beech cases in Colorado (K-Beech Inc., v. John Doe, 1-11-cv-02370-PAB, K-Beech Inc., v. John Doe, 1-11-cv-02371-CMA, and K-Beech Inc., v. John Doe, 1-11-cv-02372-MSK) filed on 8 Sep 2011. These three cases also concern the infringement of the same file in all three case's (Virgins 4), by John Does in Colorado. Plaintiff's attorney in Colorado decided to file separate cases for each John Doe, as joinder of the three could not justified by location only.

Discussions of the technical details of the BitTorrent protocol aside, the individual Defendants still have no knowledge of each other, nor do they control how the protocol works, and Plaintiff has made no allegation that any copy of the work they downloaded came jointly from any of the Doe defendants, nor that it has been used, sold or even conserved. Joining unrelated defendants in one lawsuit may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean these well-established joinder principles need not be followed here.

Because this improper joining of these Doe defendants into this one lawsuit raises serious questions of individual fairness and individual justice, the Court should sever the defendants and "drop" Does 2-2590, from the case.
*See* Fed. R. Civ. P. 21.

---

[5] http://documents.envisional.com/docs/Envisional-Internet_Usage-Jan2011.pdf

Dated: 10/18/2011                               Respectfully submitted,

*JOHN DOE*
John Doe
*Pro se*
Anonymousme4321@gmail.com


## CERTIFICATE OF SERVICE

I hereby certify that on 10/18/2011, I served a copy of the foregoing document, via Certified US Mail, on Counsel for the Plaintiff:

Law Offices of Ira M. Siegel
433 N. Camden Drive, Suite 970
Beverly Hills, California 90210-4426

Dated: 10/18/2011

*JOHN DOE*
John Doe
*Pro se*
Anonymousme4321@gmail.com