## UNITED STATES DISTRICT COURT
### Northern District of California
### San Francisco Division

PATRICK COLLINS, INC.

        Plaintiff,

vs.

DOES 1-2,590,

        Defendants.

Case No. CV-11-2766-MEJ

## MOTION TO DISMISS AND, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER AND MOTION TO PROCEED ANONYMOUSLY

Defendant Doe 1581 (hereinafter "Doe") makes this limited appearance before this Court for the sole purpose of respectfully requesting that the Court dismiss Doe from this litigation, or in the alternative, grant a protective order preventing the disclosure of the information requested by the subpoena issued to the Internet Service Provider ("ISP").

Doe recently received notice from the ISP that it had been served with a subpoena by Plaintiff in connection with the instant case (the "Litigation"). The subpoena was issued by the United States District Court for the District of Kansas. Doe was informed by the ISP that that, as the customer associated with the IP address in question at the time in question (see Exhibit A of the Complaint), Doe was identified as a putative defendant in the Litigation. Doe understands that the purpose of the subpoena is to require the ISP to provide Plaintiff with Doe's name and contact information so that Plaintiff will then be able to substitute Doe's true name in the Litigation. Doe is now moving for leave to proceed anonymously, to dismiss the allegations against Doe, and to issue a protective order.

An overview of the deficiencies in the Litigation illustrates that the Litigation violates fundamental principles of federal jurisdiction and civil procedure. Rather than repeating arguments previously made with this Court by another Doe Defendant, Doe incorporates by reference the legal argument and factual background of the Litigation that is set forth in the "Motion to Dismiss and, in the Alternative, to Issue a Protective Order and Motion for Leave to

Proceed Anonymously," at Docket No. 20, attached as Exhibit "A" ("Docket No. 20"). In short, the Litigation is a form of predatory mass litigation in which Plaintiff has taken unconstitutional shortcuts in violation of the federal courts' procedural safeguards.

As a supplement to the legal arguments and factual background of the Litigation provided in Docket No. 20, Doe provides the following information that supports that this Court lacks jurisdiction and that venue is improper:

1. Doe does not reside in the Northern District of California.
2. Doe is a medical practice with two physicians located in Ohio.
3. According to information provided by the ISP, the IP address in question, 71.50.232.143, which allegedly accessed the site in question on 4/11/11 at 5:24 a.m., is no longer associated with Doe's internet account. However, at the time in question, the IP address of 71.50.232.143 was associated with Doe's account, which is located in Ohio. The ISP can provide a statement to the Court regarding this information, if necessary.
4. Doe's practice does not do business outside of Ohio and Pennsylvania.
5. Doe does not engage in any conduct whatsoever directed toward this forum.

Also as a supplement to the legal arguments provided in Docket No. 20, Doe would like to provide this Court with an Order dismissing all but one Doe Defendant in a strikingly similar case, attached as Exhibit "B" (*On the Cheap, LLC v. Does 1-5011*, No C10-4472 BZ, Docket No. 66, Filed 9/6/11). The case attached was also filed in this District by the same attorney. In the Order, the Magistrate Judge notes that jurisdiction and venue are generally improper, and that managing a case with over a thousand defendants is not feasible. For the reasons stated in Exhibit B, joinder, jurisdiction and venue are similarly improper in this case.

Doe respectfully requests that this Court dismiss Doe from the Litigation due to lack of jurisdiction and improper venue. In the alternative, Doe requests that this court issue a protective order to protect Doe from having its identity revealed to Plaintiff and so that the ISP does not reveal Doe's information to Plaintiff.

Respectfully Submitted,

John Doe

Doe 1581
IP Address 71.50.232.143

Dated:  November 7, 2011

## CERTIFICATION OF SERVICE

I hereby certify that one copy of the within motion papers was sent on this date by first class mail to the United States District Court for the Northern District of California:

U.S. District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

I further certify that one copy of same was sent by first class mail on this date to:

Ira Siegel
433 North Camden Drive
Suite 970
Beverly Hills, CA 90210

John Doe 1581
IP Address 71.50.232.143

By: _John Doe_
Dated: November 7, 2011

Exhibit B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ON THE CHEAP, LLC, a
California Corporation,

        Plaintiff(s),

    v.

DOES 1-5011,

        Defendant(s).

No. C10-4472 BZ

**ORDER SEVERING DOE
DEFENDANTS 1-16
AND 18-5011**

Plaintiff's complaint, filed on October 4, 2010 and
amended on January 25, 2011, alleges that Doe defendants 1-
5011 are liable for copyright infringement because they used
BitTorrent software to illegally download or distribute the
same adult film, entitled "Danielle Staub Raw." Docket Nos. 1
and 7.[1] On January 25, 2011, plaintiff moved for an order
granting expedited discovery to allow it to serve subpoenas on
defendants' internet service providers (ISPs) so it could

---

[1] Plaintiff has reached a settlement with about 70 Doe
defendants and dismissed them with prejudice from this action.
See Docket Nos. 13, 14, 44 and 45.

1

1  learn the identity of each Doe and serve the summons and
2  complaint. Docket No. 6. On February 3, 2011, I granted
3  plaintiff's motion. Docket No. 10. In the ensuing months,
4  multiple defendants filed motions to quash those subpoenas,
5  raising issues such as innocence, lack of personal
6  jurisdiction, improper joinder, and improper venue. A check
7  of the Court's docket disclosed that no defendant had appeared
8  and no proof of service had been filed. At the same time, I
9  became aware of an outbreak of similar litigation in this
10 District and around the country, and of the concerns raised by
11 some of the judges presiding over these cases. I therefore
12 ordered plaintiff to show cause why this matter should not be
13 dismissed for misjoinder and improper venue and scheduled a
14 hearing for August 24. Docket No. 37. Having reviewed
15 plaintiff's response to the order to show cause as well as an
16 amicus brief filed by the Electronic Frontier Foundation, and
17 having considered the arguments of counsel, I find that the
18 almost 5000 remaining Doe defendants are improperly joined for
19 the reasons explained below.[2]

20      FRCP 20(a)(2) allows a plaintiff to join multiple
21 defendants in one action if:

22          (A) any right to relief is asserted against them
            jointly, severally, or in the alternative with
23          respect to or arising out of the same transaction,

24

25 [2]      Plaintiff has consented to this Court's jurisdiction
   for all proceedings, including entry of final judgment under 28
   U.S.C. § 636(c). Docket No. 5. No defendant has been served.
26 See Ornelas v. De Frantz, 2000 WL 973684 at *2 (N.D. Cal. June
   29, 2000)("The court does not require the consent of defendants
27 in order to dismiss this action because defendants have not
   been served, and, as a result, are not parties under the
28 meaning of 28 U.S.C. § 636(c)").

                               2

occurrence, or series of transactions or
occurrences; and
(B) any question of law or fact common to all
defendants will arise in the action.

Even if these conditions are met, joinder is not mandatory and the Court may order separate trials to protect any party against embarrassment, delay, expense, or other prejudice. FRCP 20(b). The Court is permitted to sever improperly joined parties at any time, as long as the severance is on just terms and the entire action is not dismissed outright. FRCP 21. A decision to sever may be made on the Court's own motion or on a party's motion. Id.

Many courts, including several from this District, have already addressed how the joinder rules apply to lawsuits against Doe defendants who are alleged to have acted in concert by using BitTorrent or other similar peer-to-peer (P2P) software to infringe copyright laws. Most recent decisions on this issue have concluded that the use of the BitTorrent protocol does not distinguish these cases from earlier rulings in P2P cases in which courts found that joining multiple Doe defendants was improper since downloading the same file did not mean that each of the defendants were engaged in the same transaction or occurrence. See, e.g., IO Group, Inc. v. Does 1-435, Case No. 10-4382-SI (N.D. Cal. Feb. 3, 2011); Diabolic Video Productions, Inc. v. Does 1-2099, Case No. 10-5865-PSG (N.D. Cal. May 31, 2011); Pacific Century Int'l, Ltd. v. Does 1-101, Case No. 11-2533-DMR (N.D. Cal. July 8, 2011); Boy Racer v. Does 2-52, Case No. 11-2834-LHK (PSG) (N.D. Cal. Aug. 5, 2011); MCGIP, LLC v. Does 1-149, Case

3

1  No. 11-2331-LB (N.D. Cal. Aug. 15, 2011); <u>Hard Drive</u>
2  <u>Productions, Inc. v. Does 1-188</u>, Case No. 11-1566-JCS (N.D.
3  Cal. Aug. 23, 2011).[3]  I agree with the views expressed by
4  these courts and find that plaintiff has not established that
5  joinder would be proper under FRCP 20(a)(2) merely because
6  defendants used BitTorrent to download the same film.[4]

7      Even if plaintiff had satisfied FRCP 20(a)(2)'s
8  conditions for joinder, I would still sever the Doe defendants
9  based on my discretionary authority under FRCP 20(b) and FRCP
10  21.  See <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1296 (9th
11  Cir. 2000); <u>Wynn v. Nat'l Broad. Co., Inc.</u>, 234 F.Supp.2d
12  1067, 1078 (C.D. Cal. 2002)("A determination on the question
13  of joinder of parties lies within the discretion of the
14  district court")(citations and quotations omitted).  Since

15

16  [3]    Other courts have ruled to the contrary in permitting
   plaintiffs to conduct early discovery to identify the Doe
   defendants and deferring the question of joinder and severance
17  until after the Doe defendants are named and served.  <u>See,</u>
   <u>e.g.</u>, <u>Voltage Pictures, LLC v. Does 1-5000</u>, 2011 WL 1807438 at
18  (D.D.C. May 12, 2011); <u>Call of the Wild Movie, LLC v. Does 1-</u>
   <u>1062</u>, 2011 WL 996786 (D.D.C. March 22, 2011); <u>MCGIP, LLC v.</u>
19  <u>Does 1-18</u>, Case No. 11-1495-EMC (N.D. Cal. June 2, 2011); <u>First</u>
   <u>Time Videos, LLC v. Does 1-500</u>, Case No. 10-6254-RC (N.D. Ill.
20  Aug. 9, 2011); <u>Millennium TGA, Inc. v. Does 1-21</u>, Case No. 11-
   2258-SC (N.D. Cal. July 22, 2011).
21

22  [4]    <u>Boy Racer</u>'s analysis is particularly helpful.  Case
   No. 11-2834-LHK (PSG) at *4-5.  In <u>Boy Racer</u>, the Court was not
   persuaded by the copyright holder's argument, which plaintiff
23  sets forth here, that all of the defendants were involved in
   the same transaction because each one of them joined the same
24  "swarm" to download or distribute the copyrighted movie and
   were therefore acting in concert.  <u>Id.</u>  <u>Boy Racer</u> found that
25  the large gap of time — six weeks — between the alleged
   infringing act of the first Doe and the last Doe showed that
26  the defendants may not have been cooperating with each other.
   <u>Id.</u>  The same is true for this case since Doe 1's infringing
27  act allegedly happened on June 19, 2010 while Doe 5011's
   infringing act took place almost seven weeks later on August 6.
28  <u>See</u> Docket No. 7, Ex. A.

4

1   joinder is permissive in character, there is "no requirement
2   that the parties must be joined," particularly where joinder
3   would "confuse and complicate the issues for all parties
4   involved" rather than make the resolution of the case more
5   efficient.  Wynn, 234 F.Supp.2d at 1078, 1088 (citing Wright,
6   Miller & Kane, Federal Practice and Procedure, § 1652).  In
7   its joinder analysis, the Court is required to "examine
8   whether permissive joinder would comport with the principles
9   of fundamental fairness or would result in prejudice to either
10  side."  Coleman, 232 F.3d at 1296 (citations and internal
11  quotations omitted).

12      Here, the joinder of about 5000 defendants will not
13  promote judicial efficiency and will create significant case
14  manageability issues.  For instance, many of the Doe
15  defendants will likely raise different factual and legal
16  defenses.[5]  This is apparent from the motions to quash that
17  were filed.  Compare Docket No. 23 (Doe 406 is a Virginia
18  resident who claims to have never used BitTorrent), with
19  Docket No. 19 (Doe T was an Oregon resident until he died in
20  March 2010, according to his daughter).  If I allow this
21  matter to proceed with about 5000 defendants, it will create a
22  logistical nightmare with hundreds if not thousands of
23  defendants filing different motions, including dispositive
24  motions, each raising unique factual and legal issues that
25

26      [5]      The presence of different factual and legal defenses
    also cuts against plaintiff's argument under FRCP 20(a)(2)(B),
    which permits joinder only when "any question of law or fact
27  common to all defendants will arise in the action."  Obviously
    plaintiff did not believe there was sufficient commonality to
28  allege a FRCP 23 defendant class.

5

1  will have to be analyzed one at a time.  <u>See, e.g.</u>, <u>Hard Drive</u>
2  <u>Productions</u>, Case No. 11-1566-JCS at *19; <u>Boy Racer</u>, Case No.
3  11-2834-LHK (PSG) at *5.  Because the large number of
4  defendants with individual issues will create "scores of mini-
5  trials involving different evidence and testimony" and
6  complicate the issues for all those involved, it is more
7  efficient to proceed with separate cases where there will be
8  separate proceedings, including separate motion hearings and
9  ADR efforts.  <u>Hard Drive Productions</u>, Case No. 11-1566-JCS at
10  *19; <u>see</u> <u>also</u> <u>IO Group, Inc.</u>, Case No. 10-4382-SI at *7
11  (noting that one factor weighing in favor of severance is that
12  "since the claims against the different Defendants most likely
13  will involve separate issues of fact and separate witnesses,
14  different evidence, and different legal theories and defenses,
15  which could lead to jury confusion, separate trials will be
16  required for each Defendant")(quoting <u>Fonovisa, Inc. v. Does</u>
17  <u>1-9</u>, 2008 WL 919701 at *6 (W.D. Pa. Apr. 3, 2008)).

18       There are also case manageability problems.  This Court
19  has already struggled with the logistical issues associated
20  with keeping the identities of the moving Doe defendants
21  sealed so that their privacy rights are protected.  Such
22  procedural hurdles will only become more problematic as this
23  case moves forward.  <u>See, e.g.</u>, <u>Hard Drive Productions</u>, Case
24  No. 11-1566-JCS at *19 (the Court and the defendants would
25  have to serve each party with each filing, "a significant
26  burden when, as here, many of the defendants will be appearing
27  pro se and may not be e-filers").  During argument, plaintiff
28  could not explain how a FRCP 26(f) pretrial conference or a

6

1    FRCP 16(b) case management conference would take place with

2    5000 defendants. No courtroom in this building can hold over

3    200 people, let alone 5000. Nor did plaintiff explain how

4    discovery or trial will proceed with so many different

5    parties. See id. (finding that 188 defendants will make

6    discovery "unmanageable" and courtroom proceedings

7    "unworkable"). At the hearing, plaintiff argued that these

8    issues could be resolved by appointing a committee of lawyers

9    to represent the defendants. Plaintiff did not provide any

10    authority for this proposition or explain how this committee

11    would be chosen or paid.

12       Additionally, I find that joinder would be inappropriate

13    for this case because it would violate the "principles of

14    fundamental fairness" and be prejudicial to the defendants.

15    Coleman, 232 F.3d at 1296; see also Hard Drive Productions,

16    Case No. 11-1566-JCS at *19. Plaintiff is located in Southern

17    California. The majority of Doe defendants are located

18    outside of Northern California. See Schoen Declaration at ¶

19    41 (4232 out of 5011 defendants in this case are likely

20    located outside California); Nicolini Declaration at ¶ 23

21    (plaintiff's supporting declaration concedes that only 1 out

22    of 7 defendants were likely using a California IP address when

23    the alleged infringing behavior occurred and only 1 out of 5

24    of these California IP addresses were likely from the Northern

25    District of California). I reviewed the first hundred Does

26    listed in the Schoen Declaration and only one appears to be a

27    resident of this District. Most of the Californians appear to

28    be residents of the Central District where plaintiff is

1   located. Plaintiff, well aware of the difficulties out-of-

2   state and out-of-district defendants would face if required to

3   appear in San Francisco, has nonetheless sent them settlement

4   demands which apparently inform them that they have been sued

5   in this District. The defendants are left with a decision to

6   either accept plaintiff's demand or incur significant expense

7   to defend themselves in San Francisco or hire an attorney to

8   do so. This does not comport with the "principles of

9   fundamental fairness," and, along with the other prejudices

10   highlighted earlier, compels me to exercise my discretion to

11   sever each defendant but one.[6]

12       During argument, plaintiff admitted that it was not aware

13   of any court which had permitted the joinder of 5000

14   defendants. Plaintiff's response to many of the concerns I

15   expressed was to ask for more time to serve defendants and to

16   decide how it wants to proceed. Plaintiff sought to justify

17   this delay on the grounds that it had not yet learned the

18   identity of every Doe. However, plaintiff never explained why

19   it had not served the Does whose identity it knew months ago

20

21       [6]   The Court's concerns are heightened by plaintiff's
refusal to file under seal a copy of its settlement letter and

22   related information about its settlement practices. The film
sells for $19.95 on plaintiff's website. According to public

23   reports, plaintiffs in other BitTorrent cases, rather than
prosecuting their lawsuits after learning the identities of

24   Does, are demanding thousands of dollars from each Doe
defendant in settlement. If all this is correct, it raises

25   questions of whether this film was produced for commercial
purposes or for purposes of generating litigation and

26   settlements. Put another way, Article 1, section 8 of the
Constitution authorizes Congress to enact copyright laws "to

27   promote the Progress of Science and useful Arts." If all the
concerns about these mass Doe lawsuits are true, it appears

28   that the copyright laws are being used as part of a massive
collection scheme and not to promote useful arts.

1   or why those Does should have to endure the uncertainty

2   created by the possibility that they may have to defend this

3   lawsuit in San Francisco during the additional months it takes

4   for plaintiff to identify all 5000 defendants.

5       Plaintiff also never addressed how the litigation

6   strategy it adopted is fair to any defendant. Knowing that

7   most defendants were not from this District, plaintiff

8   nonetheless asserted that venue was proper and omitted from

9   the complaint any allegation that would support personal

10   jurisdiction over any defendant. At the hearing, plaintiff

11   suggested two approaches to personal jurisdiction, neither of

12   which I find tenable. First, plaintiff asserted that it had

13   alleged a prima facie case of jurisdiction, sufficient to

14   allow it to take jurisdictional discovery against the

15   thousands of defendants who are not California residents.

16   Since there are no jurisdictional allegations in the

17   complaint, it is hard to see how plaintiff has made out a

18   prima facie case and permitting it to take jurisdictional

19   discovery from thousands of defendants whom it has no reason

20   to believe have any connection with California would violate

21   "principles of fundamental fairness."[7]

22       Plaintiff also asserted that by virtue of their

23

24

25

26       [7]    Without ruling on the issues of jurisdiction and venue, I note that they have troubled other courts. <u>See, e.g.</u>,

27   <u>CP Prods., Inc. v. Does 1-300</u>, 2011 WL 737761 (N.D. Ill. Feb. 24, 2011); <u>Nu Image, Inc. v. Does 1-23322</u>, 2011 WL 3240562

28   (D.D.C. July 29, 2011).

9

1 "swarming" activity,[8] the out-of-state defendants have engaged
2 in concerted activity with the California defendants. The
3 problem with this theory is that since plaintiff could have
4 filed this lawsuit in any state, the logical extension would
5 be that everybody who used P2P software such as BitTorrent
6 would subject themselves to jurisdiction in every state. This
7 is a far cry from the requirement that "there be some act by
8 which the defendant purposefully avails itself of the
9 privilege of conducting activities within the forum State,"
10 which is the hallmark of specific jurisdiction. See, e.g.,
11 Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475
12 (1985)(quotations and citations omitted); Schwarzenegger v.
13 Ford Martin Motor Co., 374 F.3d 797, 801-802 (9th Cir. 2004).

14 Even though plaintiff justified the need for expedited
15 discovery so it could identify and serve Doe defendants
16 (Docket No. 6), eleven months after the complaint was filed,
17 not a single Doe has been served. Had that happened, the
18 Court undoubtedly by now would have resolved some of the
19 jurisdictional and venue issues this case presents in a
20 concrete, adversarial fashion. Based on those rulings, some
21 of the management problems discussed above might have been
22 ameliorated. Instead, plaintiff appears to have used the
23 information from the subpoena for a different purpose: to
24 extract settlements from out-of-state defendants by notifying
25 them that they have been sued in California, knowing that it

26

27      [8]     A "swarm" is a group of BitTorrent users involved in downloading or distributing a particular file. See Diabolic
28 Video Productions, Case No. 10-5865-PSG at *2 (defining "swarm" and explaining how the BitTorrent software operates).

10

1  is highly unlikely that many of them will be amenable to suit
2  in California.

3       One final concern: it does not appear that plaintiff has
4  served any of the defendants within 120 days of learning their
5  identities earlier this year.  Asked at the hearing why the
6  case should not be dismissed for failing to comply with FRCivP
7  4(m), plaintiff orally requested an extension of time to
8  serve, but did not show good cause for its failure.  Its
9  request is **DENIED**.  Courts have dismissed similar copyright
10 infringement lawsuits where plaintiffs did not effect service
11 within 120 days from the filing of the complaint.  See, e.g.,
12 CP Prods., Inc. v. Does 1-300, 2011 WL 737761 at *1 (N.D. Ill.
13 Feb. 24, 2011).

14      This Court does not condone copyright infringement and
15 encourages settlement of genuine disputes.  However,
16 plaintiff's desire to enforce its copyright in what it asserts
17 is a cost-effective manner does not justify perverting the
18 joinder rules to first create the management and logistical
19 problems discussed above and then offer to settle with Doe
20 defendants so that they can avoid digging themselves out of
21 the morass plaintiff is creating.  See IO Group, Case No. 10-
22 4382-SI at *9 ("Plaintiff's motive for seeking joinder,
23 therefore, is to keep its own litigation costs down in hopes
24 that defendants will accept a low initial settlement demand.
25 However, filing one mass action in order to identify hundreds
26 of Doe defendants through pre-service discovery and facilitate
27 mass settlement, is not what the joinder rules were
28 established for.")

                              11

1    Were plaintiff truly desirous of enforcing its copyright
2  in fair fashion, it has options available. For example, had
3  it filed a lawsuit in each of the four districts in
4  California, at a cost of three additional filing fees, it
5  would have eliminated many of the venue and jurisdictional
6  problems discussed above and could have properly asserted to
7  many Doe defendants that they were being sued in a district in
8  which jurisdiction and venue would lie. Whether that would
9  have mitigated the other joinder and management issues
10  discussed earlier is less clear.[9]

11    For the foregoing reasons, **IT IS HEREBY ORDERED** that the
12  Doe defendants are improperly joined. **IT IS FURTHER ORDERED**
13  as follows:

14    1. All defendants except for Doe 17 are hereby **SEVERED**
15  from this action and dismissed without prejudice.[10]

16    2. By **September 20, 2011**, plaintiff shall notify, by
17  first-class mail, every Doe defendant for whom it has or
18  obtains an address, that all defendants except Doe 17 have
19  been severed and dismissed from this action. The notice shall
20  include a copy of this Order. By **September 23, 2011**,
21  plaintiff's counsel shall file a declaration attesting that
22  plaintiff has complied with this provision, and attaching a
23  copy of the notice plaintiff has sent to the Does.

24

25    [9]    Plaintiff remains free to pursue its copyright
     infringement claims against each individual Doe defendant.
26

27    [10]    Doe 17 remains as the lone defendant rather than Doe
     1 because Doe 17 is the first defendant on plaintiff's list of
     IP addresses who appears to reside in the Northern District of
28  California. See Schoen Declaration.

12

1        3.    Plaintiff shall have until **October 7, 2011** to amend

2    its complaint and serve Doe 17, if it wishes to proceed with

3    its claims against this defendant.  The case management

4    conference, currently set for September 26, 2011, is continued

5    to **December 13, 2011** at **4:00 p.m.** in **Courtroom C**, 15th Floor,

6    Federal Building, 450 Golden Gate Avenue, San Francisco,

7    California 94102.

8    Dated: September 6, 2011

9                                                 _____

                                                  Bernard Zimmerman
10                                                United States Magistrate Judge

11   G:\BZALL\-BZCASES\ON THE CHEAP V. DOES\ORDER AFTER OSC HEARING 3.wpd

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    13

Clerk's Office
United States District Court for the Northern District of California

**RE: Patrick Collins, Inc. v. Does 1-2590**
**Northern District of CA Case # 11-cv-2766 (MEJ)**
**I.P. Address of the Doe Defendant:** 24.215.237.108

Dear Sir/Madam,

I am one of the defendants in the above referenced matter. My IP address is 24.215.237.108. Enclosed please find a motion to dismiss and in the alternative, issue a protective order and a motion to proceed anonymously.

Sincerely,

John Doe

Doe Defendant
IP address 24.215.237.108

Exhibit A

## MOTION TO DISMISS AND, IN THE ALTERNATIVE,
## TO ISSUE A PROTECIVE ORDER AND
## MOTION FOR LEAVE TO PROCEED ANONYMOUSLY

### INTRODUCTION

Defendant Doe[2] (hereinafter "Doe") makes this limited appearance before this Court for the sole purpose of respectfully requesting that the Court dismiss Doe from this litigation, or in the alternative, grant a protective order preventing disclosure of the materials requested by subpoena issued to the Internet Service Provider ("ISP").

Doe recently received notice from the ISP that it had been served with a subpoena by Plaintiff in connection with the instant case (the "Litigation"). The Subpoena was issued by another Court in a different District. At the same time, Doe was informed for the first time that, as the owner of a given IP address, he is currently identified as a putative defendant in the Litigation. Doe understands that the purpose of the subpoena is to require the ISP to provide Plaintiff with Doe's name and contact information, so that Plaintiff will then be able to substitute Doe's true name in the Litigation. Doe is now moving for leave to proceed anonymously, to dismiss the allegations against him, and to issue a protective order. Doe is also moving to quash the subpoena in the court that issued the Subpoena. A brief overview of the deficiencies in the Litigation illustrates that the Litigation violates fundamental principles of federal jurisdiction and civil procedure.

In the Litigation, Plaintiff filed a single complaint against 2590 defendants, identified simply as Does 1-2,590. The Complaint alleges that each defendant committed a similar legal violation of copyright infringement by downloading a movie from the Internet; however, the Complaint admits that the Defendants engaged in this conduct separately, independently, at different times, and in different locations. The Defendants are identified only by the IP addresses associated with the computers which allegedly downloaded the information. The Complaint alleges that the owners of the accounts associated with those IP addresses committed the copyright infringement – even though Plaintiffs have no basis for asserting whether the owner or some other authorized or unauthorized user of the computer or computer network committed the violation. Based on this critical – and baseless – assumption, Plaintiffs next sought to learn the identities of the owners of the IP addresses by requesting the Court to issue subpoenas to internet service providers requiring those ISPs to provide the names of the owners of those IP addresses.

As the arguments set forth herein demonstrate, the instant case is a predatory mass litigation in which Plaintiff has taken unconstitutional shortcuts in violation of the most

---

[2] Defendant has not received any copies of the papers filed in the underlying litigation and therefore does not know which number "Doe" he is in that litigation. These documents will refer to the undersigned Defendant as Doe.

fundamental principles of the federal courts' procedural safeguards. Accordingly, Doe respectfully requests that the Court dismiss Doe from the Litigation, or at the very least, issue a protective order preventing disclosure of information about Doe requested in the subpoena.

**I.      The Court Should Allow John Doe to Proceed Anonymously**

As an initial matter, Doe respectfully requests that he be permitted to proceed anonymously in filing this motion. The only way for defendant John Doe to protect his rights by way of these motions without identifying himself by name is to proceed anonymously. See 2TheMart.com, 140 F.Supp.2d at 1095-98; Best Western Int'l Inc. v. Doe, No. CV-06-1537, 2006 WL 2091695 at *5 (D. Ariz. July 25, 2006). Proceeding anonymously is the only method of not rendering moot these proceedings by disclosing the very same information which Plaintiff seeks to obtain through its improper subpoena. In other words, quashing the subpoena while requiring defendant John Doe to proceed in his own name would entirely defeat the purpose of the motion to quash. Accordingly, Doe respectfully requests that the Court permit him to proceed anonymously.

**II.     The Complaint Should Be Dismissed because the Venue Is not Proper in this District**

Venue for claims asserted under the Copyright Act is governed by 28 U.S.C. § 1400(a), which requires that a civil suit to enforce the Copyright Act be brought in a judicial district "in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Nu Image, Inc. v Does 1-23,322, District of Columbia 11-cv-2021 (7/29/2011). In Nu Image the United States District Court for the District of Columbia dismissed the plaintiff's complaint based on the reasoning that only 84 defendants of the more than 23,000 resided in DC. The Court held that:

> It is worth noting here that Plaintiff's counsel has brought similar copyright infringement suits before this Court, and has asserted in each that venue is proper within this District under 28 U.S.C. § 1391(b) and/or 28 U.S.C. § 1400(a).1 However, when copyright infringement is the sole claim being alleged, it is misleading, and arguably disingenuous, to assert that venue may be proper under section 1391(b), the general venue statute, when section 1400(a) is the exclusive venue statute for copyright infringement actions. As described in the Court's prior order, venue for claims asserted under the Copyright Act is governed by 28 U.S.C. § 1400(a), which requires that a civil suit to enforce the Copyright Act be brought in a judicial district "in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). In essence, section 1400(a) requires that every single defendant can be "found here" in order for venue to be proper in this Court.

Id. at pages 3-4.

In this case the Doe Defendant does not reside in the District and as a result the Court should dismiss the Doe defendant from this case.

## III.    The Complaint Should be Dismissed because the Court Does Not Have Personal Jurisdiction over the Defendant

This Court cannot consider this case unless it has personal jurisdiction over Defendant Doe, and the Plaintiff has failed to meet its burden of establishing that such jurisdiction exists. Generally, the law recognizes that a plaintiff can sue a defendant only in a jurisdiction with which the defendant has a connection, and the plaintiff bears the burden of proving that a constitutionally-sufficient connection exists.    This requirement "gives [ ] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Plaintiff has not met this burden in its Complaint. The complaint asserts a single piece of identifying information about Doe: his IP address. Nonetheless, upon minimal investigation, this single piece of information is sufficient to establish that personal jurisdiction over Doe does not exist in this state. Armed with an IP address, identifying the home state of Doe is very easy. There are numerous publically available websites where any member of the public, including Plaintiff, can conduct a search based on an IP address and produce results identifying the general location of the user, including city and state. For example, a quick search of Doe's IP address on www.ip2location.com reveals that the IP address associated with Doe's computer is physically located in New York. Thus, Doe's IP address – the only identifying feature of Doe asserted in the Complaint – establishes that Doe does not reside in this District.

Moreover, Plaintiff fails to identify any other purported contacts that Doe may have with this District, let alone contacts sufficient to satisfy the constitutional minimum contacts threshold.    Importantly, there is no such thing as generalized Internet jurisdiction. Plaintiff appears to suggest that Internet users may be haled into court anywhere their ISP has other customers, and thus (arguably), has significant contacts. This approach runs directly counter to well-settled constitutional principles and prevailing case law. In GTE New Media Services Inc. v. BellSouth Corp., the Court of Appeals for the D.C. Circuit rejected just such an expansive theory of jurisdiction. 199 F.3d 1343 (D.C. Cir. 2000). In that case, plaintiffs asserted that the court had jurisdiction over foreign commercial defendants for the additional reason that they had "entered into an agreement outside of the District with an eye toward attracting Internet users in the District to their websites . . . and thereby draw advertisers away from [plaintiff]." Id. at 1349. The court observed that there was no evidence of financial harm to the plaintiff in the District and squarely rejected the notion that the ability of a D.C. resident to access and use a website was sufficient to establish personal jurisdiction over the operator of the website. Id.

Thus, the fact that the ISP provider supplies service to other people in this District or is otherwise subject to jurisdiction here due to its own minimum contacts does not change the analysis with regard to the actual defendants in this lawsuit. Merely contracting with an ISP (or

any other corporation) that happens to have other business in this District does not signify any intent of the customer to interact commercially with anyone in this District. The ISP provider operates offices across the nation; the fact that it provides service in this District cannot be the basis for suing its foreign customers here.

Generally, a defendant can be haled into court in a jurisdiction if that defendant has some sort of connection with the jurisdiction. For example, the D.C. Circuit has found jurisdiction where, unlike here, commercial defendants served customers within the district. In Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 511-13 (D.C. Cir. 2002), the court had jurisdiction over defendant brokerage firm where D.C. residents could open brokerage accounts online and use them to buy and sell securities, transmit funds, borrow and pay commissions and interest. Thus, the court noted, "[a]s a result of their electronic interactions, Ameritrade and its District of Columbia customers enter into binding contracts, the customers become owners of valuable securities, and Ameritrade obtains valuable revenue." Id. at 512-13. In line with this precedent, in Arista Records Inc. v. Sakfield Holding Co. S.L., 314 F. Supp. 2d 27, 31 (D.D.C. 2004), the court held that the evidence that a District of Columbia resident had subscribed to and used a music-downloading website, which required filling out personal information, agreeing to a license agreement, and downloading and installing proprietary software, was sufficient to establish personal jurisdiction over a nonresident website operator in a copyright infringement action brought by record companies. Unlike these cases, however, in this case defendant Doe is a private individual who has not engaged in any conduct whatsoever directed toward this forum.

Furthermore, the fact that a private individual uploads movies or statements on a file-sharing website which may then be downloaded in the District was insufficient to confer personal jurisdiction. GTE New Media Services Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000).

These decisions are consistent with the general "sliding scale" rules established by courts for determining the proper jurisdiction for suits arising out of Internet activities. Under these "sliding scale" principles, defendants who passively post information on the Internet for others to examine and copy are not subject to personal jurisdiction based on their Internet postings. ALS Scan, Inc. v. Digital Serv. Consultants, 293 F.3d 707, 714-15 (4th Cir. 2002). Further down the scale, defendants whose Internet sites are commercially "interactive," meaning that they design and utilize their websites for the purpose of engaging in business transactions, are subject to being sued in any state in which a substantial number of business transactions occur. Id. In general, the greater the degree of commercial interactivity along this continuum, the greater a defendant's liability for suit in a foreign jurisdiction. Id. Thus, the Fourth Circuit found that there was no personal jurisdiction over a nonresident ISP in a copyright infringement action brought by the owner of photographs against the ISP and its customer who had allegedly published the copyright-protected photographs because the ISP's activities of providing bandwidth to the

customer and publishing the ISP's own website were merely passive; thus, the ISP did not direct its electronic activity specifically at any target in the district and did not manifest an intent to engage in a business or some other interaction in district. Id. See also Mink v. AAAA Dev. LLC, 190 F.3d 333, 336-37 (5th Cir. 1999) (maintenance of Internet website accessible to Texas consumers did not support exercise of personal jurisdiction over that defendant); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997) (no jurisdiction over a Florida corporation which had directed "no commercial activity over the Internet in Arizona. . . . [but only] post[ed] an essentially passive home page on the web"). Cf. Neogen Corp. v. Neo Gen Screening, 282 F.3d 883, 888-89 (6th Cir. 2002) (finding personal jurisdiction where, in addition to other contacts, defendant not only maintained website but provided customers in the district with passwords so they could access confidential test results via that website).

The allegations against Doe in this case do not include claims of commercial interaction with anyone in this District. Instead, Plaintiff simply alleges that Doe (and the other defendants in this case) used a generally-available software program to upload and download bits of copyrighted material via the Internet, just as any passive website owner or participant in a message board discussion might upload and download to and from the Internet. The mere possibility that someone in this District might access data uploaded from Doe's computer is not a constitutionally sufficient basis for subjecting Doe to suit here, where he has done nothing to direct his conduct to this jurisdiction.

In short, requiring New York resident Doe to litigate in this District creates exactly the sort of hardship that the personal jurisdiction requirements exist to prevent. It requires Doe to hire an attorney from this District, where the Doe has no contacts. The cost of hiring an attorney from this District even to defend a defendant's identity (let alone the merits of the case) is likely more than the cost of settlement, and possibly even more than the cost of judgment if Doe was found liable for the alleged violation. Before Plaintiff asks this Court to permit that burden to be imposed upon the Defendant, the Court should direct Plaintiff to establish that this Court has jurisdiction over Doe. It is clear that not only did Plaintiff improperly sue Doe in this District, but also brought suit against hundreds of other defendants in an apparent effort to force all defendants to incur the expense and burden of defending themselves in a foreign District, or forcing them to settle in order to avoid that expense.

Upholding Plaintiff's claims would require proceeding on a theory that the Court may exercise personal jurisdiction over any person across the country, or even the world, so long as the alleged claim involves Internet use. Federal courts have soundly, and quite correctly, rejected this type of approach. Plaintiff's attempt should be rejected here, as well. Therefore, the Court should grant Doe's motion to dismiss for lack of jurisdiction, or in the alternative, require Plaintiff to make an evidentiary showing that personal jurisdiction exists over Doe.

## IV.   Plaintiff Has Improperly Joined the Defendants Based on Separate and Different Alleged Acts

Plaintiff has improperly joined numerous defendants together in this lawsuit, without sufficient basis. Federal Rule 20 permits joinder of defendants when a two pronged test is met: (1) any right to relief is asserted against defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20. At most, Plaintiffs here allege a single common question of law in that defendants are alleged to have committed similar copyright violations. However, Plaintiffs have not, and cannot, allege that any right to relief is asserted jointly or severally, or that the violations arise out of the same series of transactions, or that the first prong is satisfied in any manner whatsoever. Accordingly, the allegations in the Complaint are plainly insufficient to satisfy the Rule 20 standard and Doe respectfully urges the Court to sever his claim.

The claim that joinder is proper based on BitTorrent or other peer-2-peer protocols has been reviewed and almost universally rejected by various Courts. LaFace Records LLC v. Does 1-38, 2008 U.S. Dist. LEXIS 14544, 2008 WL 544992 at 1 (rejecting Plaintiff's argument that copyright infringement claims did not arise out of the same transaction, occurrence, or series of transactions. ..because each defendant used the same ISP as well as the same P2P networks); See also Interscope Records v. Does 1-25, 2004 U.S. Dist. LEXIS 27782, at 2 (holding improper joinder although defendants were alleged to have disseminated the plaintiffs' copyrighted works through the same P2P network); Elektra Entertainment Group, Inc. v Does 1-9, 2004 U.S. Dist. LEXIS 23560, 2004 WL 2095581, at 1 (finding the mere use of the same P2P protocol was insufficient to establish the plaintiff's copyright infringement claims were logically related for purposes of Rule 20(a)(2)); Fonovisa, Inc. v. Does 1-9, 2008 U.S. Dist LEXIS 27170, 2008 WL 919701 (finding joinder improper because of the different factual contexts of the alleged infringement for each defendant and absence a showing of any evidence showing joint action by defendants, other than their use of the same P2P network to access copyrighted recordings); Hard Drive Productions, Inc. v. Does 1-188, 2011 U.S. Dist. LEXIS 94319 (holding joinder of Doe Defendants improper based on alleged us on Bit torrent protocols; Diabolic Video Productions v. Does 1-2,099, 2011 U.S. Dist. LEXIS 58351, 10 (Grewal, M.J.) (N.D. Cal. May 31, 2011) (held that the nature of the Bit Torrent protocol does not make joinder appropriate where defendants allegedly used BitTorrent to infringe copyrighted works. IO Group v. Does 1-19, 2010 U.S. Dist. LEXIS 133717, *8-9 (N.D. Cal. Dec. 7, 2010). (Holding that the "only factual allegation connecting the defendants" - the allegation that they all used the same peer-to-peer network to reproduce and distribute the plaintiff's copyrighted work – was insufficient for joinder of multiple defendants under Rule 20.); IO Group, Inc. v. Does 1-435, 2011 U.S. Dist. LEXIS 14123, *15-16 (N.D. Cal. Feb. 3, 2011). Lightspeed v. Does 1-1,000, 2011 U.S. Dist LEXIS 35392 (N.D. Ill. March 31, 2011) (plaintiff alleged that the defendants illegally reproduced and

distributed its copyrighted works over the Internet through BitTorrent, the court severed defendants because of improper joinder.); Boy Racer v. Does 1-71, 2011 U.S. Dist. LEXIS 57975 (Grewal, M.J.) (N.D. Cal. May 31, 2011) (Severed for improper joinder based on peer-to-peer architecture identical to BitTorrent protpocals); Boy Racer v. Does 1-52, 2011 U.S. Dist. LEXIS 58345 (Grewal, M.J.) (N.D. Cal. May 31, 2011) (same)."

Mass joinder of individuals has been roundly rejected by courts in similar cases. As a court explained in one such case, even the purported factual and legal similarities in such cases are insufficient to satisfy the second prong of the Rule 20 test:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants).

Similarly, in LaFace Records, LLC v. Does 1-38, the court ordered severance of a lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same alleged violation of the law in exactly the same way. No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008). Despite these similarities, the court found that "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." Id. This result is clear based on the two-pronged standard of Rule 20, and applies even more strongly here where the second prong – similar questions of fact and law – is much weaker than in LaFace, and the first prong is similarly unsatisfied.

In fact, the improper joinder is so strong in these cases that one court *sua sponte* severed multiple defendants in an action where the only alleged connection between them was the allegation they used the same ISP to conduct copyright infringement. BMG Music v. Does 1-4, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006). See also Interscope Records v. Does 1-25, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate *sua sponte* recommended severance of multiple defendants in action where only connection between them was alleged use of same ISP and P2P network to engage in copyright infringement); BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); General Order, In re Cases Filed by Recording Companies, filed in Fonovisa, Inc. et al. v. Does

1-41 (No. A-04-CA-550 LY), Atlantic Recording Corporation, et al. v. Does 1-151 (No. A-04-CA-636 SS), Elektra Entertainment Group, Inc. et al. v. Does 1-11 (No. A-04-CA-703 LY); and UMG Recordings, Inc., et al. v. Does 1-51 (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004) (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, Twentieth Century Fox Film Corp., et al., v. Does 1-12, No. C-04-04862 (N.D. Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery as to first Doe defendant but staying case as to remaining Does until plaintiff could demonstrate proper joinder).

Nor does the allegation of a similar method for committing the alleged illegal activity create a basis for joinder. In Nassau County Association of Insurance Agents, Inc., v. Aetna Life & Casualty, for example, the Second Circuit refused to allow 164 insurance companies to be joined in a single action simply because they allegedly used the same methods to cheat agents, describing that attempted joinder as "a gross abuse of procedure." 497 F.2d 1151, 1154 (2d Cir. 1974). Here, the second prong cannot be satisfied because whether the alleged infringement concerns a single copyrighted work or many, it was committed by unrelated defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses. That attenuated relationship is not sufficient for joinder. See BMG Music v. Does 1-203, 2004 WL 953888, at *1.

The Court should dismiss the complaint against all the Doe defendants in order to avoid causing prejudice and unfairness to the defendants. Hard Drive Productions, Inc. v. Does 1-188, Case Number 3:11-cv-1566, N.D. Cal. Docket No. 26, Page 19. That case contains an exhaustive analysis as to why the joinder of multiple defendants in copyright infringement cases is improper. First, permitting joinder in this case would undermine Rule 20(a)'s purpose of promoting judicial economy and trial convenience because it would result in a logistically unmanageable case. See Bridgeport Music, Inc. v. 11C Music, 202 F.R.D. 229, 232-33 (M.D. Tenn) (holding permissive joinder of 770 putative defendants would not promote judicial economy because the court's courtroom could not accommodate all of the defendants and their attorneys, and therefore could not hold case management conferences and could not try all of plaintiff's claims together). Second, permitting joinder would force the Court to address the unique defenses that are likely to be advanced by each individual Defendant, creating scores of mini-trials involving different evidence and testimony.

Finally, permissive joinder of the Doe Defendants does not comport with the "notions of fundamental fairness," and that it will likely cause prejudice to the putative defendants. Id. The joinder would result in numerous hurdles that would prejudice the defendants. For example, even though they may be separated by many miles and have nothing in common other than the use of

BitTorrent, each defendant must serve each other with all pleadings – a significant burden when, as here, many of the defendants will be appearing pro se and may not be e-filers. Each defendant would have the right to be at each other defendant's deposition – creating a thoroughly unmanageable situation. The courtroom proceedings would be unworkable – with each of the Does having the opportunity to be present and address the court at each case management conference or other event. Finally, each defendant's defense would, in effect, require a mini-trial. These burdens completely defeat any supposed benefit from the joinder of all Does in this case, and would substantially prejudice defendants and the administration of justice.

Thus, Plaintiff's allegations that Defendants committed similar legal violations based on similar downloading conduct is insufficient to satisfy the "common questions of law or fact" standard of Rule 20's second prong. Moreover, it is undisputed that Plaintiff has not alleged and cannot satisfy the joint and several liability or same transaction requirements of Rule 20's first prong. Therefore, joinder is clearly improper in this case and the Court should sever the claims against each defendant. Fed. R. Civ. P. 21. Specifically, the Court should follow the example of courts in similar cases and maintain this action against Doe 1 only and dismiss the claims against all other defendants without prejudice.

## V.      Defendant Doe Moves this Court to Issue a Protective Order

Although courts have not, as a general matter, recognized the right to quash a subpoena (or issue a protective order concerning a subpoena) issued to a different party, courts have found that, in some cases, movants who are not the subpoena recipients have sufficient standing based on "the nature of the information sought." See First Indem. of Am. Ins. Co. v. Shinas, No. 03 Civ. 6634, 2005 WL 3535069, at *3 (S.D.N.Y. Dec. 23, 2005). Here, Plaintiff seeks to obtain the name and address of the John Doe defendants. Thus, even though the subpoena is not issued to Doe, the information sought is Doe's personal information, and he clearly has an interest in that information sufficient to confer standing here.

Standing may be found when the movant, though not the subpoena recipient, asserts a "claim of privilege," Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2nd Cir. 1975); "has a sufficient privacy interest in the confidentiality of the records sought," ADL, LLC v. Tirakian, No. CV 2006-5076(SJF)(MDG), 2007 WL 1834517, at *2 (E.D.N.Y. June 26, 2007); or seeks to protect "a proprietary interest in the subpoenaed matter," United States v. Nachamie, 91 F.Supp.2d 552, 558 (S.D.N.Y.2000). See also Ariaz-Zeballos v. Tan, No. 06 Civ. 1268, 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007) (standing found to quash subpoena issued to non-party banks based on movant's "privacy interest in [his] financial affairs") (citations omitted); Ungar v. Palestinian Auth., 400 F.Supp.2d 541, 553 (S.D.N.Y.2005) (standing to quash subpoena where there was an "excessive number of documents requested, the unlikelihood of obtaining relevant information, and the existence of attorney-client privilege for all documents").

Under Federal Rule of Civil Procedure 26(c), a court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause. Fed.R.Civ.P. 26(c). It is clear that this mass litigation, including the Subpoena, are pursued solely for the purpose of harassing defendants and forcing them to settle in order to avoid the burden and expense of litigating in a foreign court. Even if this Court decides not to dismiss the litigation, or not to rule on that motion at this stage in the proceedings, the Court should issue a protective order in order to protect Doe from having his identity revealed to plaintiffs so that they may pursue their predatory scheme against him.

Respectfully Submitted,

John Doe

John Doe, IP Address 24.215.237.108

Dated: 10/28/11

## CERTIFICATION OF SERVICE

I hereby certify that one copy of the within motion papers was sent on this date by first

class mail to the United States District Court for the Northern District of California:

U.S. District Court
Northern District of California
450 Golden Gate Ave
San Francisco, CA 94102

I further certify that one copy of same was sent by first class mail on this date to:

Ira Siegel
433 North Camden Drive
Suite 970
Beverly Hills, CA 90210

John Doe, IP Address 24.215.237.108

By: _John Doe_

IP Address 24.215.237.108

Dated: 10/28/11