

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Patrick Collins, Inc. ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. CV-11-2766-MEJ |
| DOES 1-2590 ) | MOTION TO QUASH OR MODIFY |
| *Defendants* ) | SUBPOENA AND MOTION TO DISMISS |
| _____ / ) | |

## MOTION TO QUASH OR MODIFY SUBPOENA AND MOTION TO DISMISS

I was not the direct recipient of the subpoena at issue in this case, but am instead an end user of Charter Cable, an Internet service provider (ISP) which was served the subpoena and notified me via a separate letter. These subpoenas are used to reveal the personal information of ISP end users whose Internet Protocol (IP) address is allegedly the source of a copyright infringement of Plaintiff's property. My ISP states that my IP address has been identified as allegedly belonging to one of the defendant "Does" (a placeholder name used when a defendant's true identity is unknown).

However, based on a large volume of accounts by previous defendants of copyright infringement lawyers, such as Steele Hansmeier, the Law Firm of Ira M. Siegel, K-Beech Inc. and the Law Offices of D. Gill Sperlein, once the end users are identified, they receive persistent letters and phone calls from the plaintiff's lawyers, demanding amounts ranging from $3,000 to $12,000 to avoid a lawsuit.

Despite the large volume of demand letters and calls, only a handful of court cases have actually resulted, with default judgment against defendants who chose not to participate in the judicial process being the ultimate result (see *IO Group, Inc. v. Does 1-244*, case 3:10-cv-03647-

*MEJ*). Thus the purpose of the subpoenas and indeed these lawsuits is to extract settlement payments from as large a number of end users who have allegedly committed copyright infringement as possible, subjecting innocent and guilty end users alike to the same monetary demands and, significantly, the risk of severe damage to reputation because many of the works allegedly infringed are adult material.

I did not infringe the copyrighted work cited by Plaintiff and was not familiar with it until receiving the letter from my ISP. I respectfully request that I be allowed to file this motion without revealing my personal identifying subscriber information, because copyright infringement lawyers have stated publicly they intend to selectively prosecute every "Doe." One such lawyer who filed cases nearly identical to this one, states in a court document that:

> "Plaintiff was voluntarily dismissing movants who were seeking to sever Doe Defendants and suing them individually **in the hopes that by doing so it would cause future Doe Defendants in similar litigations in this District and around the country to stop** filing these motions . . . Plaintiff has every intention of **suing every one of the movants that file a motion to sever** and proceeding to trial if necessary." (*Patrick Collins, Inc. v. John Does 1-58, case 3:11-cv-00531-JAG*)

Incidentally, the Plaintiff in this Collins case was asked by Judge John Gibney, Jr., to show why they should not be sanctioned for violating Rule 11(b) of the Federal Rules of Civil Procedure on "representations to the court," for an almost identical case (*K-Beech, Inc., v. John Does 1-85, case 3:11-cv-00469-JAG*).

The Plaintiff in my current case will argue that this motion should be dismissed because it was filed anonymously. But as the example cited makes clear, the reason for requesting anonymity for this motion is because I fear this type of selective retaliation by Plaintiff. Indeed, I am so concerned about being singled out and made an example of that I will be mailing the motion to the court and Plaintiff from a State other than my own.

By filing this motion anonymously, I draw attention to Plaintiff's tactics in pursuing this and similar copyright infringement cases. Had I filed this motion under true name or IP address, I would almost certainly be singled out by Plaintiff for selective prosecution, as the lawyer in the cited case explicitly described. This prosecution would then have more to do with using one individual who dared file a motion as an example to other defendants who do not settle with Plaintiff, regardless of guilt, and less to do with the alleged copyright infringement.

## INTRODUCTION

The nature of these subpoenas and the actions taken by the infringement lawyers indicate a strategy of producing revenue via settlement payments, by subjecting every alleged user to the burden of calls and letters, threat of damage to reputation, and cost of seeking counsel, ultimately based only upon their IP addresses, even though an IP address does not prove the culpability of an individual defendant, or even completely isolate a pool of potential defendants, because anyone outside of a household can penetrate a wireless network and infringe materials under that network's IP address.

This point is clearly explained by Judge Paul S. Grewal, ruling on *Discount Video Center, Inc. doing business as Mayhem v. Does 1-5041*:

"... the court has serious doubts as to the efficacy of the ISP subpoenas in uncovering the identity of the individuals alleged to have committed infringement ... The reason is simple: an IP address exposed by a wireless router might be used by the subscriber paying for the address, but it might not. Roommates, housemates, neighbors, visitors, employees or others less welcome might also use the same address." (*case 4:11-cv-02694-CW*)

Judge Grewal's observation about this limitation of the IP address should be clear to a layman, and is doubtless well understood by the Plaintiffs in these types of cases. Therefore they use the courts simply as a tool to generate lists of potential copyright infringers, who are then constantly pressured to settle for a dollar amount that appears carefully calibrated to be roughly equivalent to the cost of legal defense, but far less than the potential monetary damages that could be imposed by a court judgment. Thus, for an innocent end user falsely accused based on IP address, the cost of settling appears much less than the cost of a court case, and has the advantage of not revealing their name in public court records tied to infringing works that are often pornographic or otherwise seen as deviant in nature, and thus carry risk of significant damage to reputation, which could be at best humiliating and at worst socially and professionally devastating to any innocent end user.

My argument echoes the opinion of Judge Gibney, in the very similar case of *K-Beech, Inc., v. John Does 1-85, case 3:11-cv-00469-JAG*, and three other almost identical cases on Judge Gibney's docket:

". . . the plaintiffs sought, and the Court granted, expedited discovery allowing the plaintiffs to subpoena information from ISPs to identify the Doe defendants. According to some of the defendants, the plaintiffs then contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation. When any of the defendants have filed a motion to dismiss or sever themselves from the litigation, however, the plaintiffs have immediately voluntarily dismissed them as parties to prevent the defendants from bringing their motions before the Court for resolution. This course of conduct indicates that the

plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does. Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits."

Judge Gibney's observation that such lawsuits are aimed at revenue generation via coerced settlements, rather than actual interest in litigating based on legal merit, is reinforced by further statements by counsel of the Plaintiff in the Collins case:

"Many John Doe defendants are destitute and therefore not worth suing . . . Several John Does have been public or political figures who Plaintiff did not to [sic] choose to sue." (*Patrick Collins, Inc. v. John Does 1-58, case 3:11-cv-00531-JAG*)

Had the Plaintiff been pursuing its case with the primary intention of upholding the law and defending its copyright via actual litigation based on merits, it would not cite a guilty party's lack of wealth or a guilty party's social influence or political standing as a reason not to sue. After all, being poor does not make a defendant copyright infringement, while being a public or political figure seems still less defensible. To suggest that defendants not be pursued because they are "public or political figures" makes a mockery of the bedrock judicial principle that all citizens are equal in the eyes of the law.

## ARGUMENTS

**1. Plaintiff has not done significant investigative effort to justify granting a subpoena for subscriber information from ISP**

**2. Plaintiff has improperly joined 2590 individual defendants based on entirely disparate alleged acts**

**1. Plaintiff Has Not Done Significant Investigative Effort to Justify Granting a Subpoena For Subscriber Information From the Internet Service Provider**

As noted by previous courts, the use of these cases (and the courts) as a means of obtaining subpoenas to issue settlement letters is well documented ("Fishing Expeditions"). Even when John Doe defendants choose not to settle, the plaintiffs in these cases ultimately fail to name defendants and start further court actions. Many of these types of cases are kept open for as long as possible so the plaintiffs can obtain as much settlement money as possible, before they voluntarily dismiss the case and move onto a new one. Recent developments in a Steele Hansmeier PLLC Case (*First Time Videos v. Does 1-500, case 1:10-cv-06254*), is a prime example where Plaintiff kept the case open for a year without naming a defendant. On 28 Sep 2011, Steele Hansmeier dismissed all but eight Doe defendants from this case; subscriber information for the eight Does defendants were still pending from the ISP. There is a well-documented history of these types of cases in the Northern Districts of Illinois and California.

The court should also note the very cursory effort Plaintiff has taken to identify the true copyright infringers. As the IP address assigned to each defendant does not resolve to a single culpable individual, simply going after the registered owner of the IP address is irresponsible. The registered user of the IP address only identifies the person who pays the ISP for Internet access. There are multiple possibilities as to why the defendant did not copyright infringe against Plaintiff. Some of the most common scenarios are: home wireless connection (the source of the IP address) was unsecured or secured with a low level of encryption, resulting in its use by

unauthorized personnel to commit acts of infringement without knowledge of defendant; or perhaps more even more commonly, home wireless connection was secured but password was freely given to household members and friends and associates of household members, making it possible for numerous persons other than defendant to commit acts of infringement without defendant's knowledge. Without significant additional investigative steps, innocent persons will inevitably be implicated in infringement activity and pressured to pay settlement amounts or face a federal lawsuit that not only entails significant legal fees, but also publicly exposes their possible involvement in a case about adult material, which in itself could incur significant harm via damage to reputation, professional disgrace, etc.

## 2. Plaintiff has improperly joined 2590 individual defendants based on entirely disparate alleged acts

Plaintiff's counsel, Law Firm of Ira M. Siegel is using improper joinder in this mass lawsuit alleging copyright infringement through BitTorrent. Similar mass law suits in New Jersey (*BASEPROTECT UG, LTD., a German Corporation v. Does 1-266, case 2:11-cv-02021-DMC-JAD*).

Many almost identical cases have been dismissed, such as *CP Productions, Inc. v. Does 1-300, case 1:2010cv06255,* and in this case the court notes before dismissal:

> "[I]f the 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap – if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350."

In another Steele Hansmeier BitTorrent case in Illinois, Judge Harold A. Baker writes in

denying the motion for expedited discovery:

> "Plainly stated, the court is concerned that the expedited *ex parte* discovery is a fishing expedition by means of a perversion of the purpose of and intent of Fed. R. Civ. P. 23." (*VPR Internationale v. Does 1-1017, case 2:2011cv02068*)

In the Northern District of California, these nearly identical BitTorrent cases have been severed for improper joinder:

- *Pacific Century International LTD v. Does 1-101, case 4:2011cv02533* (severed Does 2-101)
- *IO Group, Inc. v. Does 1-435, case 3:2010cv04382* (severed does 2-435)
- *Diabolic Video Productions, Inc. v. Does 1-2099, case 5:2010cv05865* (severed Does 2-2099)
- *New Sensations, Inc. v. Does 1-1768, case 5:2010cv05864* (severed Does 2-1768)

In yet another nearly identical BitTorrent case, filed in the Northern District of California by Steele Hansmeier (*Millennium TGA, Inc.v. Does 1-21, case 3:2011cv02258*), Judge Samuel Conti found the same joinder problems, and wrote in his order denying request for leave to take early discovery, "this Court does not issue fishing licenses."

And these nearly identical BitTorrent cases in the Northern District of California by the same plaintiff Boy Racer, again represented by Steele Hansmeier, have been severed for improper joinder:

- *Boy Racer, Inc. v. Does 1-52, case 5:2011cv02329* (severed Does 2-52)
- *Boy Racer, Inc. v. Does 1-71, case 5:2011cv01958* (severed Does 2-72)

In a recent order (6 Sep 2011) by Judge Bernard Zimmerman, Northern District of California, 5010 John Does were dismissed from *On The Cheap, LLC, v. Does 1-5011, case C10-4472 BZ*, due to improper joinder. Judge Zimmerman stated the following in his order:

> "This Court does not condone copyright infringement and encourages settlement of genuine disputes. However, Plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create the management and logistical problems discussed above and then to offer to settle with Doe defendants so they can avoid digging themselves out of the morass plaintiff is creating."

Plaintiff's joinder of 2590 defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued. Mass joinder of individuals has been disapproved by federal courts. As one court noted:

> "Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . .
> Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants." *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants).

Rule 20 requires that, for parties to be joined in the same lawsuit, the claims against them must arise from a single transaction or a series of closely related transactions. Specifically:

> "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." *Fed. R. Civ. P. 20.*

Thus, multiple defendants may be joined in a single lawsuit only when three conditions are met:

(1) the right to relief must be "asserted against them jointly, severally or in the alternative";

(2) the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; and

(3) there must be a common question of fact or law common to all the defendants. *Id.*

Joinder based on separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement has been rejected by courts across the country. In *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008),

the court ordered severance of lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to commit the exact same violation of the law in exactly the same way.

Plaintiff may argue that, unlike the RIAA cases, its allegations here are based upon use of the Internet to infringe a single work. While that accurately describes the facts alleged in this case, it does not change the legal analysis. Whether the alleged infringement concerns a single copyrighted work or many, it was committed by unrelated defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses. That attenuated relationship is not sufficient for joinder. See *BMG Music v. Does 1-203, 2004 WL 953888, at \*1*.

Plaintiff has also improperly joined many IP addresses (Doe defendants) that do not reside within the jurisdiction of the court. Plaintiff conducted only a cursory collection of IP addresses and did not try to determine where the IP addresses are physically located. Even with their limited IP addresses analysis, Plaintiff should have been able determine that many of the IP address were not within the court's jurisdiction.

Many of the Courts that previous heard these types of mass copyright infringement cases have correctly described the activity of mass joining as a "Fishing Expedition" for subscriber information. Plaintiff has no intention of naming any of the Doe defendants, much less bringing them to an actual trial after they obtain this information and settlement efforts fail. Plaintiff will use the subscriber information obtained from the ISPs to send out settlement letters attempting to scare Doe defendants into paying a couple thousand dollars to make the case go away, regardless of truly being guilty. The current state of mass copyright infringement cases in the US clearly shows this is the standard business model for these types of cases.

## CONCLUSION

It is clear that the intention of the Plaintiff in this case is to maximize monetary return from coerced settlements, filing court cases to extract the personal information needed to carry out a comprehensive collections effort. It is a collections effort that leverages individuals' fear of being accused in open court of viewing adult material, and a targeted settlement amount that provides a financial incentive that appears to make settlement more attractive than the cost of litigation, even for innocent individuals. On top of that, in many examples of nearly identical lawsuits, the cases are dropped without being litigated, showing that plaintiffs in these cases are investing in the collections effort, but not in actual litigation based on legal merits, as that would significantly increase their costs and offset monies gained via settlements.

Additionally, this litigation strategy relies on highly suspect procedure, a point that has been the basis of numerous decisions by other courts to sever all but a single defendant or dismiss similar cases altogether. Like in those cases, the improper joining of 2590 Doe defendants into this one lawsuit raises serious questions of individual fairness and individual justice.

As Plaintiff does not intend to conduct further investigative effort and only wishes to engage in a massive collections effort against defendants regardless of guilt, I respectfully request the Court dismiss the subpoena requiring the ISP provide personal subscriber information on all John Doe defendants. In addition, I respectfully request the court sever Doe defendants 2-2590 from this case, as there is no evidence to show that all the Doe defendants acted together and they are thus incorrectly joined (see Fed. R. Civ. P. 21).

Dated: 11/14/2011					Respectfully submitted,


							_____
							John Doe
							*Pro se*

## CERTIFICATE OF SERVICE

      I hereby certify that on 11/14/2011, I served a copy of the foregoing document, via US Mail, to:

      Law Offices of Ira M. Siegel
      433 N. Camden Dr
      Ste 970
      Beverly Hills, CA  90210

Dated: 11/14/2011                                Respectfully submitted,

                                                                   _____

                                                                   John Doe
                                                                   *Pro se*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
U.S. District Court
Office of the Clerk
450 Golden Gate Ave
San Francisco, CA  94102


Law Offices of Ira M. Siegel
433 N. Camden Dr, Ste 970
Beverly Hills, CA  90210