Case3:11-cv-02766-MEJ

John Doe
Contact at:
**contactabledoe@hushmail.com**



# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Patrick Collins, Inc., <br> a California corporation, <br><br>                 Plaintiff, <br> v. <br><br> DOES 1-2590, <br><br>                 Defendants. | Case No. 3:11-CV-11-2766-MEJ <br><br> MOTION TO QUASH OR MODIFY SUBPOENA <br><br> PROCEED ANONYMOUSLY |

## MOTION TO QUASH OR MODIFY SUBPOENA

To the Honorable Judge Maria-Elena James:

I have received a subpoena from my ISP regarding identifiable information.

I choose to remain only identifiable by the provided **valid email address** and am reachable via the email address provided in this document. I feel that protecting my identity protects me and my ISP from techniques known to be used by the plaintiff or others in similar cases including but not limited to harassing contacts, threatening with escalating settlement claims, after the plaintiff has utilized the court system to acquire such identifying information.

In Document 26, the plaintiff has responded that identifying information is needed to determine personal jurisdiction and accordingly, before that information is provided, any grounds is premature. Based solely on IP address, which is the only linking information, the location/jurisdiction of the does can be identified by readily available websites as well as the CEG system as documented in the original case filing.

1

Based on previous orders on motions (e.g. Document 68) that have been ruled upon it is noted that many of these arguments listed below may be premature. However, I believe it is worth noting each individual's personal arguments and research and I label them as considerations through the remainder of this document. I plead with the Honorable Judge to reflect on these considerations, which I research and collected, in each case.

**Considerations:**

1. Considerations on joinder based on swarm timeframe:

   "Second, Judge Zimmerman, also of the Northern District of California, ruled that BitTorrent users in the same swarm can only be joined if they are present in the **swarm at the same time**. If a defendant comes along a week later when another defendant is no longer part of the swarm, those defendants cannot be joined."

   -http://torrentfreak.com/the-economics-of-killing-mass-bittorrent-lawsuits-110918/

   -On the Cheap, LLC v. Does 1-5011 Document 66

In this case the court notes say that the identified swarm (by hash) has been used over **nine months** from May 19, 2010 to June 2, 2011. According to Judge Zimmerman, joinder would only be proper to those involved in the swarm at the same time and that separate times does not show "in concert action."

2. Considerations on Merit/Action:

It is worthy to note that the large duration of time the plaintiff/CEG allowed the swarm and the alleged copyrighted material to be in existence (the nine months quoted that CEG was able to download portions of the file in question from accused infringer Does) would indicate that the plaintiff is interested in filing large suits for possible profit instead of the intended purpose of such copyright suits of ending copyright infringement. **If the intent was to end copyright infringement, the file in question would not have been allowed to exist for the large duration** after CEG's system identified the file to be the same copyrighted material.

According to CEG's website they provide options for both "*monetization*" and "*takedown*" of the copyrighted material. "Copyright owners receive automated **daily reports** and have access to C4, our web-based client portal, providing **real-time data**" according to the CEG website.

-http://www.copyrightenforcementgroup.com/takedown.html

CEG also provides convenient monetization as it states:

"Customizable notices are automatically generated and sent directly to infringing parties or via an ISP. Infringers receive the notification directing them to Copyright Enforcement Group's branded settlement portal www.copyrightsettlements.com, where they can chose amongst multiple settlement options."

-http://www.copyrightenforcementgroup.com/monetization.html

CEG also claims that it can act as a new revenue source:

"Establish a new revenue source while offering infringers multiple settlement options with our Monetization service. Settlement offers are fully customizable and can include opportunities such as hard goods, subscriptions, licensing arrangements, straight settlements or any other offering of your choice. Your options are limitless.

Content owners can choose a soft fan-friendly marketing based approach, a stringent graduated response system, models that include litigation, leveraging CEG's vast intellectual property attorney network or anything in-between."

-http://www.copyrightenforcementgroup.com/monetization.html

The original claim is that the plaintiff is seeking to limit and recoup damages associated with the infringement on copyrighted material. The list of alleged infringements in the original case filing "Exhibit A" **show that there was knowledge of the alleged distribution of the file with the associated hash in dates ranging from May 2010 to June 2011.** If the intention is to limit damages and loss of profits for the copyrighted material in the alleged infringement, the distribution (according to the known given hash, as identified and verified by CEG's system) would have been terminated at a much earlier time.

This conclusion is arrived based on data provided by CEG claiming the ability to "takedown" as well as their ability to provide "daily reports" as previously cited in this document. This would eliminate the alleged sharing of the copyrighted works as soon as the file was properly identified as stated in the CEG's system description.

Instead of limiting the alleged reproduction of the plaintiff's copyrighted material, the systems used by the plaintiff appear to have tracked and collected any use of the file with the same hash over the course of nine months as stated in the case text. The question has to be asked as to **why the plaintiff would allow the copyrighted material to continue to be distributed for such a long duration.** Why was a case not brought to court at the start of the alleged distribution in May 2010?

Furthermore, if the goal is to prevent the alleged distribution of the file in question, why did the plaintiff not provide any form of **DMCA notice to the proper ISPs** regarding this alleged infringement immediately after identifying the copyright infringement that the plaintiff has claimed?

3. Considerations on district jurisdiction:

The case notes say that **CEG recorded IP state (and often city) location** yet the plaintiff is still joining 2,590 does in one large suit in one court jurisdiction. This increases the burden of said court while minimizing the work the plaintiff must perform to properly file suits in appropriate jurisdictions.

"A US District Court can only hear cases concerning defendants that fall within its jurisdiction. Many judges have questioned how an IP-address from another part of the country could fall within the power of their district. This issue has prompted multiple judges to dismiss vast chunks of these BitTorrent lawsuits."
    -http://torrentfreak.com/the-economics-of-killing-mass-bittorrent-lawsuits-110918

4. Consideration in regard to keeping identity from plaintiff:

"Judge Baker of the Central District of Illinois ruled that an IP-address does not constitute a person. He decided this in ruling on the issue of "good cause", which is required for the court to issue a subpoena that allows the plaintiffs to discover the subscriber's personal information associated with the IP address. This is vitally important because without the information the plaintiffs have nowhere to send the settlement letters."
    -http://torrentfreak.com/the-economics-of-killing-mass-bittorrent-lawsuits-110918/

In his ruling, Judge Baker stated that many of the IP addresses before his court could be associated with institutions like universities, or even public wi-fi hotspots. Additionally, he expressed doubt that a subscriber was the likeliest person to be the infringer – "[it] might be…someone in the subscriber's household, a visitor with her laptop, a neighbor…"
    -http://torrentfreak.com/the-economics-of-killing-mass-bittorrent-lawsuits-110918/

5. Considerations regarding Ira M. Siegel based on other cases found during research:

"The Court's concerns are heightened by plaintiff's refusal to file under seal a copy of its settlement letter and related information about its settlement practices. The film sells for $19.95 on plaintiff's website. According to public reports, plaintiffs in other BitTorrent cases, rather than prosecuting their lawsuits after learning the identities of Does, are demanding thousands of dollars from each Doe defendant in settlement," Judge Zimmerman begins.

"If all this is correct, it raises questions of whether this film was produced for commercial purposes or for purposes of generating litigation and settlements. Put another way, Article 1, section 8 of the Constitution authorizes Congress to enact copyright laws 'to promote the Progress of Science and useful Arts'.

"If all the concerns about these mass Doe lawsuits are true, it appears that the copyright laws are being used as part of a massive collection scheme and not to promote useful arts," he concludes.

-http://torrentfreak.com/judge-decimates-bittorrent-lawsuit-with-common-sense-ruling-110907/

6. <u>Considerations regarding copyright material verification:</u>

In this case, Document 4 Patent/Trademark Copy provides the copyrighted material that was allegedly infringed upon by both copyright registration no. and title of work. The title of work was used by CEG's systems to identify possible swarms allegedly distributing the file. After searching to verify that a copyright existed, I discovered that the title of works did not match in the Copyright Public Catalog. The catalog list the Title ending in "1O" noted as "One Oh" as opposed to the identified search that CEG performed indicating "10" noted as "ten".

**Conclusion:**

It is because of these considerations from my research since receiving the subpoena that I feel it is in my best interest to do whatever required to protect my identity from the plaintiff and file a motion to quash/dismiss anonymously.

My apologies to the court and the Honorable Judge Maria-Elena James for filing an anonymous motion to quash and/or dismiss, yet I feel it is the bad nature of these mass lawsuits, including those of the plaintiff that has left me *no other option*.

Respectfully submitted,

John Doe
Contact at:
**contactabledoe@hushmail.com**

By: _J. Doe_

Dated: December 6, 2011
*Pro se (after consulting attorney)*

## Certification of Service

I hereby certify that one copy of the within motion papers was sent on this date via US Mail by first class mail postage fully prepaid to the United States District Court for the Northern District of California:

U.S. District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

I further certify that one copy of the same was sent via US Mail by first class mail postage fully prepaid on this date to:

Ira Siegel
433 North Camden Drive
Suite 970
Beverly Hills, CA 90210




John Doe
Contact at:
**contactabledoe@hushmail.com**



By: _____J. Doe_____

Dated: December _6_, 2011